STATE of Missouri, Respondent,

v.

Carl Wayne PAXTON, Appellant.

No. 54653.

Supreme Court of Missouri,
Division No. 2.

May 11, 1970.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

Maurice Pope, Louis Kranitz, St. Joseph, for appellant (By Appointment of the Court).

BARRETT, Commissioner.

Carl Wayne Paxton has been found guilty of murder in the first degree and sentenced to life imprisonment. In view of his assignments of error it is again necessary to set forth that part of the information charging the substantive offense of murder in the first degree: that on June 16, 1968, in Andrew County, Paxton "did then and there unlawfully, wilfully, feloniously, on purpose and of malice aforethought, while in the perpetration of a robbery, shoot and assault one Montford Lyle * * * with a deadly weapon, to wit: a .22 caliber revolver, thereby inflicting upon the said Montford Lyle * * * mortal wounds from which mortal wounds the said Montford Lyle * * * did die on June 16, 1968." Thus plainly the information directly and properly charges Paxton, not as an aider or abettor as in some circumstances is sometimes done (State v. Porter, 276 Mo. 387, 207 S.W. 774), with murder in the first degree: "and every homicide which shall be committed in the perpetration or attempt to perpetrate any * * * robbery * * * shall be deemed murder in the first degree." RSMo 1959, § 559.010, V.A.M.S. Throughout the trial and upon this appeal it is claimed that while Paxton took part in the robbery of Mr. Lyle he was not a party to his murder which admittedly was by his

accomplice in the robbery, Hunter, who in freeing himself from Lyle shot him with a .22 caliber pistol. But even in these circumstances, whatever the proof, Paxton was as a principal or as an accessory "charged, tried, convicted and punished in the same manner, as the principal in the first degree." RSMo 1959, § 556.170, V.A.M.S.; State v. Spica, Mo., 389 S.W.2d 35. Here the fact of a homicide in a robbery was charged even though the fact of a robbery could have been shown upon the mere charge of a murder. State v. Sykes, Mo., 436 S.W.2d 32, 34.

In brief these were the circumstances of the robbery and of Mr. Lyle's death: Paxton was well known in the Amazonia community of Andrew County and counted himself a friend of Mr. Lyle, the owner-operator of "Lyle's Tavern." In fact the town marshal had seen Paxton in Lyle's Tavern on the preceding Friday and Hunter was with him. On June 15th between 12:00 and 12:15 the town marshal observed that Mr. Lyle was turning out the lights and closing his tavern. He was not seen again until the following Monday when his waitress came to work and found him dead in front of the bar. He had been shot twice, once above the right ear and a second time "two inches to the front." The cash register was open and the drawer next to it pulled out and a Hershey box in which Mr. Lyle usually kept some money and valuables was missing.

Paxton and Hunter were drinking in Tura's Tavern in St. Joseph and they were talking about a place "to get some money" or to rob and Paxton said that he knew "an old man up in Amazonia" who always had four or five thousand dollars (they divided $100.00 from the robbery but overlooked $800.00 in Mr. Lyle's living quarters). Paxton had told Hunter that the old man couldn't see too well but the night they "cased" the place Hunter remarked "that the old man seemed to find his way around the room pretty well." The following Saturday night they left the tavern in St. Joseph and drove to Amazonia in

Hunter's automobile; it was late when they arrived and the tavern was closed. They drove around the village and found that the marshal was in his trailer. They drove back to the tavern and could see Mr. Lyle in the corner of the barroom at a desk. Hunter gave Paxton $1.30 with which to buy a "six-pack" and they stationed themselves on either side of the steps. Mr. Lyle responded to their knocking and while he went back of the bar for the beer they stepped inside. Paxton paid for the beer and then he said that as he turned to go out the door he heard a "couple of smacks" and wondered if Mr. Lyle had gotten to the two by four he used to defend himself. Paxton got in the automobile with the six-pack and Hunter "ran out of the tavern * * * got in and was carrying a Hershey box full of money and in the Hershey box was also a small pistol, and he said that Hunter at that time said, 'I had to kill the nosey old son-of-a-bitch.'" They went out McArthur Drive, burned the checks, divided about $100.00, threw the gun and the six-pack away and drove to Atchison, Kansas, to the residence of "these girls" who were to "cover" for them by establishing an alibi. It may be interpolated that "the girls" first said that Hunter and Paxton were with them the night and hour of the killing but upon reflection voluntarily went to the patrol officers, told the truth and one of them testified in this trial. This is but a brief outline of the circumstances which were established in great detail.

The appellant has briefed six principal points but for the most part the substance of his argument is all concerned with a single point or proposition. The essence of his claim is that the court should have sustained his motions for an acquittal because the evidence did not justify a submission that he was "guilty of aiding and abetting his co-defendant Hunter in the alleged homicide or that he was even physically present when the homicide was perpetrated by Hunter or that he (defendant) had any knowledge of the intention or purpose of

defendant Hunter to assault and kill the victim Lyle." It is for these reasons, chiefly the fact that he was in the automobile when Hunter killed Mr. Lyle, that Paxton contends that the court erred in giving Instructions 2, 4, 5, 6 and 9 which he says failed to "require the jury to find that defendant and Bert Hunter had a common design and intent to commit murder" or that there was a "prior conspiracy" or that defendant Paxton "intentionally aided and abetted said Bert Hunter in the act of murder." In this connection it is claimed that the court erred in Instruction 1 on circumstantial evidence in employing the word "than" rather than "except" (Instruction 1 was given prior to the introduction of any evidence and prior to submission). This was a long, general three-page instruction and in the eighth paragraph, of an eleven paragraph instruction, on circumstantial evidence it read "unexplainable upon any other reasonable theory *than* that of the guilt of the defendant."

The recitation of the circumstances and a summary of appellant's contentions in themselves demonstrate the fallacy of all his claims. As indicated these assignments are all based on a misconception of the information, the procedure followed, the proof and the legal consequences of Paxton's connection with Hunter and their robbery of Mr. Lyle. As pointed out, in these circumstances the information appropriately charged Paxton with killing Mr. Lyle. State v. Sykes, supra. It is not necessary to demonstrate Paxton's connection with robbing Mr. Lyle, his brief and its basic theory overlook the fact that "(i)f two or more persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal, *if the other* (or others) *commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose,* or as a natural or probable consequence thereof." State v. Chernick, Mo., 278 S.W.2d 741, 746; State v. Spica, Mo., 389 S.W.2d 35 and the lists of cases cited in these two opinions. It is not necessary to demonstrate that the circumstances of the robbery and consequent death of Mr. Lyle and Paxton's connection with the entire crime, dividing the spoils and establishing an alibi after the robbery-murder, are indeed not comparable to State v. Porter, 276 Mo. 387, 207 S.W. 774, and similar cases in which there was a failure of proof of common purpose as to the particular offense. Here there was a common scheme and purpose to at all odds and regardless of consequences to forcefully rob Mr. Lyle—a plan carried out without limitation as to Paxton's participation. State v. Darling, 216 Mo. 450, 115 S.W. 1002; State v. Jaeger, Mo., 394 S.W.2d 347. "The fact that appellant did not accompany his three companions to the home of the deceased (he stayed in the automobile) did not absolve him from guilt if robbery was the purpose of their mission. That that was their purpose is the only inference that can be drawn from the evidence. It is well settled that if a homicide is committed in an attempt to perpetrate a robbery the offense is murder in the first degree." State v. Morefield, 342 Mo. 1059, 1064, 119 S.W.2d 315, 316, a case quite similar to this on its facts. A case similar to this in many respects and dispositive of virtually every claim made here including that of Paxton's intentions and governing instructions is State v. Burnett, 365 Mo. 1060, 293 S.W.2d 335. The court again considered the statutes, particularly § 559.010, and concluded, as here, that there was substantial evidence authorizing the charge, submission and finding of a murder in an attempted robbery and a sentence of death. It was there pointed out that it was not necessary for the instructions to define "attempted robbery," or to further elaborate on acting in concert and finally the court quoted approvingly "proof that the homicide was committed in the perpetration of robbery *was* tantamount to proof of the constituent elements of the crime of murder in the first degree." State v. Bradley, 361 Mo. 267, 234 S.W.2d 556, 558.

The remaining claim not inferentially involved in the principal contention is that the court erred in "overruling objection" of counsel to the state's closing argument in which it is said that the prosecuting attorney prejudicially erred in that he "personalized the members of the jury." It is sought, in short, to bring the argument within State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524, to which there isn't the slightest resemblance on its facts. The state's attorney after referring the jury to the instructions said, "I don't care who he was with, and that as a result, while they were perpetrating that robbery, Montford Lyle was assaulted with a pistol and died. Now it would have been just the same if one of you had been standing outside the tavern and they came out and they saw you and shot you. Sure, they didn't go up there intending to shoot you, but ——." Whereupon defendant's counsel objected and "ask that he be *reprimanded and the jury discharged*, putting them in fear of their own safety." It is not, of course, proper for counsel, as appellant says, to "personalize" the jury and thus engender fear or inflame individual jurors. State v. Groves, Mo., 295 S.W.2d 169. But here and contrary to appellant's assignment of error the court did not "overrule" his objection or condone counsel's argument. On the contrary the court immediately and promptly ruled: *"As to the improper statement of the personalizing the jury, it's improper and they will disregard it."* The court refused, however, to reprimand counsel or to discharge the jury. There were no other or further requests by counsel, only "Exceptions shown," and the argument proceeded. And in all the circumstances there is no demonstration or even claim that the court abused its discretion in sustaining objection to the argument and directing the jury to disregard it but refusing to discharge the jury. State v. Sanchez, Mo., 269 S.W.2d 46; State v. Feltrop, Mo., 343 S.W.2d 36; State v. Carter, 345 Mo. 74, 131 S.W.2d 546; State v. Barker, 322 Mo. 1173, 18 S.W.2d 19. In State v. Fletcher, Mo., 244 S.W.2d 98 l.c. 104,

the argument of the special prosecutor was "you men know that I'm not threatening you tonight. What would I threaten you with? * * * I am down here today, I have got a right to have my family protected, *you have got a right to have yours* and Mr. Breuer has got a right to have his, and if we can't have law enforcement we can't have it." It was held that the court did not abuse its discretion in not even sustaining an objection to the argument. And so it is here in view of the court's sustaining an objection to the argument it may not be said that the argument was so manifestly inflammatory that this court may say that there was an abuse of discretion in not declaring a mistrial.

For all the indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.