STATE of Missouri, Respondent,

v.

Robert A. SNEED, Appellant.

No. 36647.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Jan. 25, 1977.

Motion for Rehearing or Transfer
Denied March 15, 1977.

Application to Transfer Denied
May 10, 1977.

London & Greenberg, Lawrence J. Flem-
ing, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Preston
Dean, Asst. Atty. Gen., Jefferson City,
Courtney Goodman, Jr., Pros. Atty., Thom-
as E. Dittmeier, Asst. Pros. Atty., Clayton,
for respondent.

SMITH, Presiding Judge.

Defendant appeals from his conviction by
a jury of three counts of armed robbery.
He received sentences of 28 years, ten years
and ten years. Defendant challenges the
sufficiency of the evidence, so some review
of that evidence is necessary. That review
is made in the light most favorable to the
State.

Defendant came to the house of Mi-
chael Guffey and asked him, "if I wanted to
go out to make some money." Following

Guffey's answer in the affirmative, defendant, Michael Guffey and Joe Castelli drove to the Knoll's apartment complex in St. Louis County around 10:00 p. m. on that night. Wearing stocking masks, which in one case was not pulled over the face and in defendant's case fitted loosely and was torn, they pushed open the door of an apartment rented by the Weisbergs. At gun point they robbed the three Weisbergs of money, a wrist watch, and guns. Guffey, who testified for the State and two of the Weisbergs identified defendant as a participant in this robbery. The robbery of Mr. Weisberg formed the basis of Count I. The evidence clearly supports the verdict on this count and defendant does not seriously urge the contrary.

Guffey testified that Castelli then left the Weisberg apartment followed by Guffey. In the parking lot they confronted two other men, Clarence Martin and Michael Vitale. Guffey ordered both men onto the ground at gunpoint and took their wallets. These were put into the bag with the loot from the Weisberg apartment. Vitale stated he was confronted by one man with a gun whom he could not identify. He saw another man running across the parking lot but could not identify him. Martin said he saw three men in line seven or more feet apart coming in his general direction. Two of them passed him by and said nothing to him. The other man, with a pistol, ordered him to lie down and took his wallet. He also could make no identification except that the man who robbed him was tall and very thin. Defendant was described throughout the trial as short and stocky. All three men left together in one car.

Guffey testified that at the time of the parking lot robberies, defendant was still at the apartment or still inside the house. No discussions had been had between Guffey, Castelli and defendant about robbing anyone other than Weisberg. Guffey further stated defendant had nothing to do with the parking lot robberies and was not told about them until the three arrived back at defendant's house. There they divided the money and each took two of the guns

obtained from Weisberg. There was no evidence that either Martin or Vitale had money in their wallets or that defendant knowingly received any proceeds of the Martin-Vitale robberies.

■■■ On this record we are unable to find sufficient evidence to support the verdicts on Count II, the Vitale robbery, or Count III, the Martin robbery. While there is evidence that Guffey and Castelli committed the parking lot robberies, there is no evidence that defendant did so. His guilt for those offenses must be based upon the rule:

"If two or more persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal, if the other (or others) commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose, or as a natural or probable consequence thereof." *State v. Chernick*, 278 S.W.2d 741, (Mo.1955) [2]. See also *State v. Paxton*, 453 S.W.2d 923 (Mo.1970). [1, 2].

For this rule to apply there must be knowledge of the intention or purpose to commit the particular crime or of a common purpose as to the particular offense. *State v. Porter*, 276 Mo. 387, 207 S.W. 774 (1918) l. c. 776; *State v. Paxton*, supra, [1, 2]. As was true in *State v. Brooks*, 513 S.W.2d 168 (Mo.App.1973), the rule also applies where the particular offense, while not originally planned, is the natural and probable consequence of the planned offense. There, the alleged assault by defendant was to prevent the victim of the planned robbery from testifying. That is akin to the murder of the robbery victim in *State v. Paxton*, supra.

The requisites for application of this rule of law are not found in the evidence here. The robberies on the parking lot were not in furtherance of the robbery of Weisberg, the planned crime nor the natural or probable consequence of that crime. Nor does the evidence show any knowledge by defendant of his cohorts' intention to commit such crimes, or even that he was aware of

such crimes until the parties had left the scene. The only evidence was that he had no such knowledge. The parking lot victims were unplanned targets of opportunity by Guffey and Castelli who were, in the language of the civil law, on a "frolic of their own." Since the evidence fails to establish defendant's knowledge or participation in the parking lot robberies we must reverse as to Counts II and III.

■ This largely makes unnecessary any decision on another of defendant's points— the failure to give either MAI–CR 2.12 and/or 2.14 as to each count. As to Count I, the failure to give either of those instructions was non-prejudicial. See *State v. Timley*, 541 S.W.2d 6 (Mo.App.1976).

■ Defendant's contention concerning the in-court identification is not preserved for review. No objection was made until the close of the evidence. Such objection must be made before trial or at the time the witness testifies to the identification. *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972) [3, 4].

■ The same is true of defendant's contentions attacking the constitutionality of jury sentencing. This constitutional point was not raised until the motion for new trial, not the earliest available opportunity as is required. *State v. Stock*, 463 S.W.2d 889 (Mo.1971) [7]. Additionally such sentencing has been upheld in Missouri since *Ex parte Dusenberry*, 97 Mo. 504, 11 S.W. 217 (1889).

Judgment affirmed ∘as to Count I, reversed as to Counts II and III.

NORWIN D. HOUSER and ALDEN A. STOCKARD, Special Judges, concur.