STATE of Missouri, Respondent,

v.

Earl LONG, Appellant.

No. 46536.

Missouri Court of Appeals,
Eastern District,
En Banc.

June 29, 1984.

Case Transferred to Supreme Court
Sept. 11, 1984.

Case Retransferred to Court of Appeals
Feb. 1, 1985.

Original Opinion Reinstated
Feb. 13, 1985.

362

Henry B. Robertson, Asst. Public Defender, St. Louis, for appellant.

Kristie Lynne Green, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Defendant was convicted of forcible rape, § 566.030, RSMo 1978. In accordance with the punishment assessed by the jury, he was sentenced to 48 years' imprisonment. He appeals. We reverse.

The victim was employed as a waitress in the 6th floor restaurant of the Stix, Baer & Fuller department store in downtown St. Louis. She completed work at 2:30 p.m. on August 8, 1982. To reach her automobile, parked in the Stix parking garage, she took the department store elevator up to the skywalk, which in turn led to the garage. She observed a man dressed in a white uniform seated at the end of the skywalk. She walked across the skywalk, past the man later identified as defendant, and entered a second elevator for access to the garage. The man followed her into the elevator. As she attempted to exit the elevator at her floor, the defendant stepped off with her. He placed one hand over her mouth, the other around her arms. Defendant demanded her wallet and at the same time hit his victim in the stomach. As she was lying on the floor in front of the elevator door, she reached for her wallet; the man stomped on her hand with his foot. After leafing through her wallet, he threw it back and proclaimed, "I don't want your money, bitch." He then kicked her again, she tried to get up, but he again knocked her down. As she fell, she noticed him covering his name tag. She then saw him take off the name tag and put it in his uniform pocket. He punched her several more times and undid her pants as she tried to escape. He then had intercourse with her.

At that point, the elevator door opened; defendant jumped up and walked away. A woman in the elevator screamed when she saw the events taking place and went to summon help.

The victim gave a description of her assailant to police, which was immediately broadcast over the radio. This description, reiterated with some inconsistencies, was roughly, a negro male in his twenties, five feet ten inches tall, stocky or heavy build, white clothing including a cook's hat, and light facial hair. According to two witnesses, the broadcast also stated that the suspect was last seen running toward the Cochran Housing Project.

Cochran security guard Safford saw someone matching the description several minutes after he monitored the broadcast. He summoned police after seeing the suspect receive a cigarette from a man he knew by the name of Long.

Police, accompanied by Safford, proceeded to the apartment of Virginia Long (defendant's mother). There they arrested William Long and questioned Frederick Long. As they were preparing to leave, Earl Long arrived. Although not in uniform, he was arrested on the strength of Safford's identification and advised of his rights both at the scene and at the office of the sex crimes division. He gave police a statement to the effect that he got off work at 2:30, went straight home and changed clothes. In his job, he wore a cook's uniform but no name tag.

Defendant also consented in writing to a search. His uniform was found in the closet as he had indicated. A name tag bearing his name was found in the shirt pocket. Seminal fluid was present on defendant's underwear, one of his two pairs of uniform pants and his uniform shirt.

After the attack, the victim was taken to both the police station and the hospital. At the hospital she was examined and treated for lacerations on her chin and elbows, as well as a swollen hand. Seminal fluid was found on the victim's vaginal smear, panties and pantyhose. Thereafter, she viewed a lineup containing defendant, his brother and three others. She positively identified defendant the following day, she identified his clothes. At trial, her identification of defendant as her attacker was unequivocal.

An opinion was written and adopted in Division Three affirming the conviction. A motion for rehearing was sustained. The case was reheard by the Court En Banc, where after reargument the divisional opinion was not adopted and the case was reassigned for preparation of a new opinion. In writing this opinion portions of the prior opinion are utilized without the use of quotation marks.

On appeal defendant alleges error in the prosecutor's closing argument, contending that the prosecutor personalized to the jury and argued matters not in evidence. This he contends denied him a fair trial. During the closing argument the following occurred:

[PROSECUTOR]: Now, rape is an awful thing. [Defense attorney named] said at some point that you gentlemen perhaps do not understand it because of wives and daughters. Well, I'm going to give *you* a graphic, gentlemen, because that's just not *personal* enough I feel when *you're* on the jury. I want the ladies to bear with me for a minute because I want *you* gentlemen to imagine if *you* would yourself at—

[DEFENSE ATTORNEY]: Your Honor, this is improper, personalizing to the jury.

THE COURT: Yes, you should not personalize the argument to the jury. Sustained.

[DEFENSE ATTORNEY]: May the jury—

THE COURT: Jury instructed to disregard the personalization comment of counsel.

[PROSECUTOR]: Any man, any man, *you* are come upon, he's come upon by someone of superior strength grabs *you* around the throat, spins *you* around just to get *your* attention, gives *you* an uppercut in the solar plexus just to get *your* attention, someone far superior to you in strength throws *you* to the ground and to make sure *you* understand who is the boss kicks *you* a couple of times in the head and stomach and takes off *your* pants, he doesn't fondle *you*, he grabs *you*, twists *you*, squeezes to hurt *you*. This isn't an act of love. It's to humiliate *you*, but above all, to expose hatred, to hurt *you*.

[DEFENSE ATTORNEY]: Your Honor, improper argument is the *personalization of the jury* again AND *it's going beyond the scope of the evidence.*

THE COURT: Overruled.

[PROSECUTOR]: That's what happened to [the victim named]. Doesn't stop there for the victim of a rape. The next thing that happened—This applies *to everybody on the jury* as well as anybody in the world. The next thing that [the victim named] goes through is having to relate this story time after time after

time first to the security guard, then *maybe* another one, then a police officer, then to the hospital and just after that terrifying experience—and what would presumably be a rather safe place in the world—broad, open daylight, 2:30, 3:00 o'clock in the afternoon, *you* go through this.

Well, get up on the table and spread *your* legs. And after *you* have just been through this experience someone quite more gently probes into the various areas of *your* body to remove samples, get a couple of shots to prevent venereal disease—

[DEFENSE ATTORNEY]: You know, I don't think any of this is in the evidence. No facts. I know it's not. It's a deliberate misstatement of what he knows the truth—

[PROSECUTOR]: May my—

[DEFENSE ATTORNEY]: He wants to bias the jury. None of that is in evidence. I would—Some of it is in evidence but the *venereal disease*, that's not. That's not in evidence.

THE COURT: I'll rule it. I don't recall any evidence. The jury will be guided by what they recall the evidence to be on that score.

[PROSECUTOR]: Will my time be totaled?

During this couple of hours that *you're* at the hospital *you* hear laughter, *you* feel that they're *laughing* about *your* situation. It's not true but *you* feel it.

[DEFENSE ATTORNEY]: Objection to the making of facts to support some hypothesis.

THE COURT: Overruled.

[DEFENSE ATTORNEY]: This isn't in evidence.

THE COURT: This is closing argument. Overruled.

[PROSECUTOR]: Again, at the police station every time *you* hear somebody *laugh*, people are out, don't know about *your* situation, there's a feeling they're laughing at *you*.

[DEFENSE ATTORNEY]: Closing argument is directed to the evidence and the reasonable inferences. This is not a reasonable inference. It's not relevant.

[PROSECUTOR]: They saw this woman here.

THE COURT: Overruled.

[PROSECUTOR]: They saw what this lady had to go through. The next thing—*It's not in evidence* but it happened about a year later when it's almost hopefully put somewhat behind *you, you* have to come in here and in a fishbowl situation not only tell the people who have to hear but it's an open and public courtroom with people coming in and describe that incident. That, ladies and gentlemen, is the crime that was put upon [the victim named]. (emphasis added).

It will be noted that defendant's original objection to personalization was sustained and that subsequent objections were overruled. In addition, objection was made to part of the argument as not being supported by the evidence. This too was overruled. These matters were preserved in defendant's motion for new trial.

Here the jury was told, "rape is an awful thing" and "I'm going to give you a graphic." Defendant's original objection was sustained. The prosecutor persisted, however, to personalize with his graphic. The argument was not supported by the evidence. In fact the prosecutor acknowledged that some of the facts being argued were unsupported by the evidence. Armed with the trial court's subsequent contrary ruling which erroneously permitted such personalization, the prosecutor set sail on a graphic description of post-rape matters. In the beginning of the argument the prosecutor announced to the male members of the jury that rape was not personal enough. He invited them to become the victim and addressed the jury as "you" and "your" throughout the remainder of the argument.

Appellant's contention was considered by our Supreme Court in, *State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524 (banc 1947). In the *Tiedt* case, the details of the crime, a mur-

der in the first degree, were, as here, savagely brutal. The *Tiedt* opinion emphasized that as emotions were already inflamed, all the more restraint was required by the prosecutor. The trial court originally sustained an objection to argument that "everyone in this courtroom is a potential victim of his murderous desire." The prosecutor persisted in arguing the same point and the trial court sustained all but the last defense objection. The court found reversible error in the prosecutor's repeated inflammatory appeals to arouse bias and hostility toward defendant, and granted a new trial. The court there said,

> It is a fundamental concept of the criminal law *that an accused whether guilty or innocent, is entitled to a fair trial,* and so it is the duty of the trial court, and of the prosecuting counsel as well, to see that he gets one, and there must be no conduct by argument, or otherwise, the effect of which is to inflame the prejudices or excite the passions of the jury against him. Witness these precedents: A prosecuting attorney occupies a quasi-judicial position. It is his duty to conduct the trial in such manner as will be fair and impartial to the rights of the accused. [citation omitted] It is his duty 'not to lay aside the impartiality that should characterize his official actions in order to become a heated partisan,' .... [citation omitted] ... Prosecuting 'officers should ... avoid injecting into the minds of the jury any matter which is not proper for their consideration, or which would add to the prejudice which the charge itself has produced in their minds.' ... [citation omitted] 'It makes no difference how regular the proceedings at the trial are, if prejudice finds its way into the verdict, the verdict cannot stand.' [citations omitted] 206 S.W.2d at 526–527. (emphasis added).

*See also State v. Heinrich,* 492 S.W.2d 109, 114 (Mo.App.1973).

The objectionable argument not supported by the evidence was made in the opening phase of the state's closing argument. It was not in response to defendant's theory of misidentification nor did it relate to the role of the jury in determining guilt or innocence. It was improper as solely an effort to personalize and prejudice the jury. *State v. Paxton,* 453 S.W.2d 923, 926 (Mo.1970). It must be considered an argument calculated to inflame the passions or prejudices of the jury and cannot be disassociated from their role in assessing punishment. On no legitimate basis can the argument referring to venereal disease or laughter at the victim, neither of which were part of the evidence, be justified.

█ The conduct of the prosecutor is directly condemned by the ABA standards for criminal justice, § 3–5.8(c) (1980). ABA standards for criminal justice, § 3–5.8(d) and § 3–5.9 further condemn the argument, describing intentional references or argument of facts outside the record as unprofessional conduct. A prosecuting attorney does not represent an ordinary party to a controversy, but represents the sovereign,

> whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interests, therefore, in a criminal prosecution *is not that it shall win a case, but that justice shall be done.* As such he is in a peculiar and very definite sense *the servant of the law,* the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. *But, while he may strike hard blows, he is not at liberty to strike foul ones.* It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use very legitimate means to bring about a just one. (emphasis added).

*Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935).

It is distasteful to retry a case where the evidence supporting guilt is so strong. It is not contended, nor could it be, that the verdict of guilt is not supported by the evidence. However, it is for that very reason that the case should be properly tried

free of the poisonous argument which has consistently been condemned by our case law and by accepted ABA standards for criminal justice. The integrity of the criminal justice system measured by the standard of constitutionally guaranteed rights overrides the hardship of retrial. The protection of the rights of every citizen as guaranteed by the constitution is more precious than the conviction of a defendant by acts of a prosecutor who knowingly and intentionally, by his own words, ignores such guarantees. Such conduct creates a hardship on the courts and the victims of criminal conduct. It is however the actions of the prosecutor which require a new trial. A prosecutor "may strike hard blows, he is not at liberty to strike foul ones."

▇▇▇ We need not reach defendant's challenges to the failure of the trial court to strike two veniremen for cause.[1]

▇▇▇ We hold that the prosecutor's closing argument was knowingly, intentionally and blatantly an effort to bias and prejudice the jury, that it substituted the jurors for the victim and thus disqualified the jury from performing its proper duty. It was further erroneous to permit the argument where it was founded, in part, on matters admittedly not in evidence. It cannot be said as a matter of law that this argument was not prejudicial to the defendant in the jury's deliberations, verdict and assessment of punishment where the assessment was adopted by the court in sentencing.

We reverse and remand for a new trial.

SMITH, KELLY, STEPHAN and GAERTNER, JJ., concur.

REINHARD, J., dissents in separate opinion.

1. As to one of the veniremen the state relies upon *State v. Butler*, 660 S.W.2d 222 (Mo.App. 1983) which upholds the refusal to strike a venireman expressing a bias in favor of the testimony of police officers upon the basis that police officer testimony was a minor or routine part of the evidence as it was merely cumulative to other evidence. We are unable to accept such a rationale. The law provides that a defendant is entitled to a full panel of qualified

DOWD, C.J., and CRIST and CRANDALL, JJ., dissent and join in the dissenting opinion of REINHARD, J.

REINHARD, Judge, dissenting.

I respectfully dissent.

The principal point that defendant raises on appeal, for which the majority reverses, is prosecutorial misconduct during closing argument. The state contends that defendant neither properly objected nor preserved his objections in his motion for new trial. Defendant's objections leave much to be desired and there is a debatable issue as to whether or not they were properly preserved in the motion for new trial. However, I agree with the majority to treat defendant's complaints as if they were properly preserved.

The law is clear that it is improper to personalize to the jury, *State v. Paxton*, 453 S.W.2d 923, 926 (Mo.1970), or argue matters not in evidence during closing argument, *State v. Connell*, 523 S.W.2d 132, 137 (Mo.App.1975). I agree with the majority that the prosecutor's argument went too far and constituted error.

However, it is not every improper remark or every instance of a prosecutor exceeding the limits of proper argument that will constitute ground for reversal. *State v. Williams*, 588 S.W.2d 70, 74 (Mo.App.1979); *State v. Knapp*, 534 S.W.2d 465, 469 (Mo.App.1976). In order for such arguments to constitute reversible error, they must be plainly unwarranted and clearly injurious. *State v. Kimmins*, 514 S.W.2d 381, 382 (Mo.App.1974); *State v. Hoskins*, 569 S.W.2d 235, 236 (Mo.App. 1978); *State v. Williams*, 588 S.W.2d 70, 74 (Mo.App.1979) (erroneously prejudicial).

veniremen before exercising his peremptory challenges. *State v. Lovell*, 506 S.W.2d 441, 443 (Mo. banc 1974); *State v. Land*, 478 S.W.2d 290, 292 (Mo.1972). That the testimony subsequently introduced establishes that the defendant would not have been prejudiced had the juror been allowed to remain does not eliminate the prejudice suffered by him in having to utilize a peremptory challenge on an unqualified venireman.

Consequently, the principle espoused in *State v. Degraffenreid,* 477 S.W.2d 57, 65 (Mo. banc 1972) by Judge Bardgett is controlling, "[e]rror, which in a close case might call for reversal may be disregarded as harmless when the evidence of guilt is strong." This principle was recently reaffirmed by Judge Rendlen, speaking for the Supreme Court, in *State v. Ford,* 639 S.W.2d 573, 576 (Mo.1982).

I believe that the majority opinion conflicts with *Degraffenreid* and *Ford* when it acknowledges that "[i]t is distasteful to retry a case where the evidence supporting guilt is *so strong.*" (emphasis added). Indeed it was a strong case. The evidence of the victim's identification, the circumstances of defendant's arrest, the location of his name tag in his uniform pocket precisely where the victim stated he placed it, and the finding of semen on his underclothes, pants, and shirt along with all the other facts and circumstances, created an extremely strong case against defendant. Moreover, while not excusing the prosecuting attorney's statements to the jury, comments directed to the jury by the defense attorney had already "personalized" this case to some extent. During voir dire, the defendant's attorney stated:

> I think that rape cases have a lot of emotional appeal for all of us. But I think maybe women such as myself react to the charge of rape very, very much whether in anger or whether in frustration that it goes on. I don't know but I think that men react in anger to the extent their wives, their girlfriends, or sisters or someone they know is concerned but how do you feel about sitting on a jury where that is the charge.

The majority opinion cites *State v. Tiedt,* 357 Mo. 115, 206 S.W.2d 524 (banc 1947) as authority for reversing this case. I do not find *Tiedt* controlling. In *Tiedt,* defendant was convicted of first degree murder and sentenced to *death.* Besides that matter quoted by the majority, the Court explained its decision by stating:

> in a matter so grave as urging in argument considerations affecting the exer-

cise of the jury's discretion to choose between punishing capitally or imposing a life sentence, inflammatory appeals to arouse bias and hostility toward defendant, ... cannot be sanctioned.

206 S.W.2d at 529.

This was not a capital case. Nonetheless, the majority opinion asserts that the prosecutor's closing argument affected the assessment of punishment. I disagree. Defendant was charged with an offense that carried with it a maximum punishment of life and a minimum punishment of five years. The prosecuting attorney asked that the jury assess a punishment of ninety nine years. Apart from any remarks of the prosecuting attorney, the jury was well aware of the viciousness of the crime and the terrible ordeal which the victim underwent. The victim was violently assaulted by a total stranger in broad daylight in a downtown St. Louis parking garage. Defendant's own attorney acknowledged in closing argument that the victim "went through a terrible affair" and that was a matter for the jury to consider in assessing punishment. Defendant's attorney never spoke in her closing argument to the length of sentence or mitigation of sentence. Forty eight years in the penitentiary does not establish under the facts and circumstances of this case that the sentence assessed by the jury was the result of passion and prejudice induced by the prosecuting attorney's argument.

Much of the majority's opinion appears directed at sending the prosecutor a "message" because of his misconduct. In *State v. Smothers,* 605 S.W.2d 128, 132 (Mo. banc 1980), the Supreme Court, with Judge Higgins speaking for the Court, held that a criminal case should not be reversed for the purposes of discipling and deterring prosecutors. The issue in this case "is not whether the prosecuting attorney should be disciplined for improper conduct" but whether defendant received a fair trial. *Id.* As I have already stated, considering the entire record, he did so. The mechanism for discipline of attorneys is provided for elsewhere in our system. This case

involves a conflict between two messages. On the one hand the majority wants to send a message to the prosecutor that he has hit a "foul blow." On the other hand, society must send a message to those such as defendant who violate the bodies of women against their will. I do not believe that we should send the prosecutor a message at the expense of society's message to rapists.

In summary, I do not find that the prosecutorial argument was prejudicially erroneous to the defendant; that when weighed against the entire record it was prejudicial and tipped the scales as to a fair trial against the defendant; that in light of the strength of the state's case against defendant under Supreme Court guidelines any error was harmless. I would affirm the judgment.[1]

**1.** I do not believe defendant's other point on appeal has merit. He contends the trial court erred in failing to strike a juror who stated that he would give more weight to a police officer's testimony than another witness. The court should have stricken the prospective juror. However, this is not grounds for reversal because the police testimony in this case did not prove any of the elements of the state's case. This position is supported by a recent Western District case, *State v. Butler,* 660 S.W.2d 225 (Mo.App.1983), transfer denied, December 20, 1983. It appears from footnote one that the majority would rule contrary to *Butler.*