STATE of Missouri, Respondent,

v.

Sidney ROBERTS, Jr., Appellant,

Sidney ROBERTS, Jr., Appellant,

v.

STATE of Missouri, Respondent.

Nos. 57669, 59416.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 18, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Sept. 14, 1992.

Application to Transfer Denied
Oct. 27, 1992.

**128**

Emily Blood, Kathleen Green, St. Louis, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Judge.

A jury convicted defendant, Sidney Roberts, of murder, first degree, § 565.020.1, RSMo 1986[1], and armed criminal action, § 571.015. He was sentenced to life imprisonment without probation or parole on the murder charge and to fifty years imprisonment on the armed criminal action charge; the sentences are to be served concurrently.

Defendant appeals from his convictions and sentences and from the denial of his Rule 29.15 motion. We affirm.

### Direct Appeal

Defendant does not question the sufficiency of the evidence. His challenges to his convictions and sentences, however, require a brief recitation of the facts.

The murder took place one night in September 1988. About 9:30 p.m. on that night, Mr. David Patton was at home in his second floor apartment which he shared with his cousin, Ms. Angela Brooks, and her children. He was speaking on the telephone, when noises from the outside caught his attention. He looked out his window and saw a fight taking place immediately below him. He called to his cousin to watch the fight with him.

Mr. Patton and Ms. Brooks saw two men punching a third older man, the victim, Mr. Timothy Booker. One of the two men punching him was later identified as defendant. Defendant told the police he assaulted Mr. Booker because Mr. Booker had accused defendant of "owing him some money."

Shortly after Mr. Patton and Ms. Brooks began watching the beating, they saw Mr. Booker break away from defendant and his companion and run into a liquor store located across the street from Mr. Patton's apartment. Once inside, Mr. Booker asked the clerk of the liquor store, Mr. Nathaniel Cooper, if he could use the phone. Mr. Booker appeared frightened. Mr. Cooper refused to allow Mr. Booker the use of the phone. At this point, defendant and his companion entered the liquor store in pursuit of Mr. Booker. The trio began to fight again in the store, with defendant attempting to punch Mr. Booker at least once. Mr. Cooper told the three men to leave the store because they were disturbing his customers.

Once outside, the beating continued on a lot next to the liquor store. Mr. Cooper came outside and saw defendant kick Mr. Booker in the face while Mr. Booker was on his knees. He then saw defendant run away, come back with a liquor bottle and break the bottle over Mr. Booker's head. Mr. Cooper was five to six feet away from defendant and Mr. Booker. Mr. Cooper then went back into the store, and, a "few seconds" later, he heard shots.

Mr. Patton, still watching from his window, saw defendant, his companion and Mr.

---

1. All statutory citations are RSMo 1986, unless   cited otherwise.

Booker when they came out of the store. According to Mr. Patton, the "lighting around the liquor store ... [was] lit up real good, because they have a lot of lights on the outside of it.... With [the street light] and the light coming from the liquor store, it seemed like it was daytime." He was about twenty to thirty feet away from the fracas. He watched defendant and his companion punching Mr. Booker again. He saw Mr. Booker being knocked to the ground and being kicked repeatedly. He heard Mr. Booker plead with the two men to stop. Then, he saw defendant run about twenty feet away, pick up a bottle, come back to Mr. Booker and hit him on the head with the bottle. Mr. Patton heard the bottle break.

At this point, Mr. Patton saw defendant's companion produce a gun and begin to pistol whip Mr. Booker around the face and neck. Then, Mr. Patton saw defendant take the gun away from his companion, point it at Mr. Booker's head and pull the trigger. Mr. Patton heard "snapping", the "click of the pistol when [defendant] was pulling it." He heard the "snapping" three times. The gun did not fire. Mr. Patton then heard the gun fire twice. The first shot "seemed like it hit him [Mr. Booker] in the head." Defendant then ran down the street with his companion. They returned, placed a jacket over Mr. Booker's head, and ran away.

Ms. Brooks, watching from another window in Mr. Patton's apartment, saw the same action Mr. Patton did and so testified. Mr. Booker later died from the gunshot wounds.

When the police arrived on the scene, Mr. Patton and Ms. Brooks provided them with their eyewitness accounts. They both described the man who shot Mr. Booker as being a short, muscular man. Ms. Brooks told the police she thought this man was a man she knew from the neighborhood as "Little Herc", to whom she had been introduced.

At one of several lineups held a few days later, Mr. Patton identified defendant as the man he had seen shoot Mr. Booker. Ms. Brooks was unable to make a positive identification at the lineup she viewed. At trial, however, she did identify defendant as the culprit. Mr. Cooper, the liquor store clerk, identified defendant, in a lineup and at trial, as the man who came into the liquor store that night in pursuit of Mr. Booker, and who attempted to punch Mr. Booker while in the store. At trial, a detective testified that defendant's street name was "Little Herc".

Defendant testified at trial. He said he assaulted Mr. Booker because Mr. Booker had accused him of taking "some money from [Mr. Booker]". He also said he did not shoot Mr. Booker, his companion did.

The jury found defendant guilty of murder in the first degree and armed criminal action. This appeal followed.

Defendant contends the prosecutor's improper remarks in closing argument deprived him of a fair trial. The challenged remarks were improper. They did not, however, deprive defendant of a fair trial.

■ In the last half of his closing argument, the prosecutor, Mr. Robert L. Garrison, argued that: (1) defendant was the "coolest, most collected" liar he had seen in five years of prosecuting; (2) it was his job to speak for the victim's family; (3) the jury should remember the people who loved the victim; (4) the jury should imagine what were the victim's last thoughts before dying; and (5) the jury should put itself in the victim's place on his last night. These remarks, defendant contends, constitute an improper personalization of the argument and an improper argument based upon facts not in evidence. The trial court, defendant argues, improperly failed to grant a mistrial when requested, improperly failed to sustain objections when requested and committed plain error when it failed to strike *sua sponte* part of the remarks not objected to.

The prosecutor began his improper remarks by personally evaluating the credibility of defendant:

[Prosecutor]: I told you during the first half of my closing argument that [defendant is] a very cool liar. He's a young man but he's an exceptional liar. He's

one of the coolest, most collected liars I've seen in five years of prosecuting the—

[Defense Counsel]: Objection, Your Honor. Counsel personalized.

[Court]: Sustained.

[Defense Counsel]: I move for a mistrial.

[Court]: Mistrial denied. Objection sustained.

The court properly sustained defense counsel's objection. A prosecutor may make inferences fairly drawn from the evidence, even if the inferences are not necessarily warranted. *Grubbs v. State*, 760 S.W.2d 115, 119 (Mo. banc 1988); *cert. denied*, 490 U.S. 1085, 109 S.Ct. 2111, 104 L.Ed.2d 672 (1989); *State v. Cobb*, 820 S.W.2d 704, 711 (Mo.App.1991). A prosecutor, however, may not express an opinion implying knowledge of facts unavailable to the jury. *Grubbs, supra; Cobb, supra.* Here, the prosecutor did express his opinion of defendant's credibility based upon his experience, an experience, obviously, not shared with the jurors.

Admittedly, at times, our Supreme Court has said that "[a] prosecutor has the right to comment on the evidence and the credibility of witnesses from the state's viewpoint", *State v. Woods*, 346 Mo. 538, 142 S.W.2d 87, 90 (1940), and, without elaboration, the Court also has said that "it is a fair comment on the evidence" for a prosecutor to argue to the jury: "You know this defendant got on the stand and lied to you gentlemen." *State v. Johnson*, 351 Mo. 785, 174 S.W.2d 139, 142 (1943). However, in each of these instances and other like instances, *see, e.g., State v. Lawson*, 627 S.W.2d 901, 903–904 (Mo.App.1982), the prosecutor's argument is still implicitly connected to the evidence or clearly tells the jurors to evaluate the facts based upon their own experience and common sense. Here, the prosecutor appointed himself the thirteenth juror and argued his personal beliefs based upon his own personal experience.

To permit the prosecutor to make this argument would afford him a privilege not even granted to a witness under oath and subject to cross-examination. Moreover, the argument may create the false issue of the prosecutor's reliability and credibility. Furthermore, the prosecutor's injection of his personal beliefs not only detracts from but may destroy the nonpartisan and impartial role the prosecutor, as the representative of the state, is required to assume in the courtroom. *See, e.g., State v. Jackson*, 664 S.W.2d 583, 584 (Mo. App.1984); *State v. Wintjen*, 500 S.W.2d 39, 43–44 (Mo.App.1973). He is in a position of public trust which invites and may induce the jury to accord his opinions unwarranted weight. *State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524, 526–527 (Mo. banc 1947). Thus, for him to sit as a thirteenth juror personally evaluating credibility improperly invites the jury to rely on his personal evaluations. This is not to say the prosecutor must discard the use of the personal pronoun "I". *State v. Matthews*, 790 S.W.2d 271, 272 (Mo.App.1990). It is to say the prosecutor must make clear that his inferences and conclusions are based upon the established facts.

Nonetheless, at this point in the argument, the prosecutor's single error did not amount to prosecutorial misconduct requiring the requested mistrial.[2] A mistrial is a drastic remedy which should be granted only in those extraordinary circumstances in which prejudice to the defendant can be removed in no other way. *E.g., State v. Schneider*, 736 S.W.2d 392, 400 (Mo. banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). Here, defense counsel did not request the court to instruct the jury to disregard the prosecutor's argument. That instruction, if requested, would have been the appropriate relief.

This does not end the matter, however. Shortly after his personal evaluation of defendant's credibility, the prosecutor

**2.** We caution all counsel that expressing "a personal opinion as to ... the credibility of a witness" is characterized as "professional misconduct" under Missouri's Rules of Professional Conduct. Rules 3.4(e) and 8.4(a) of Rule 4; *see also* ABA Standards for Criminal Justice, The Prosecution Function, Standard 3–5.8(b) (1986).

began and continued an argument improperly appealing to the emotion and sympathy of the jury.

[Prosecutor]: Ladies and gentlemen, it's easy to feel sorry for [defendant] because he's eighteen years old sitting here charged today with a terrible, terrible crime of taking another man's life. There are other people that I hope you will not forget when you go back into the jury room. The victim, Mr. Booker, isn't here to speak for himself and able or not, it is my job to speak for Mr. Booker and Mr. Booker was a man with a family.

[Defense Counsel]: Objection, Your Honor, this is improper.

[Court]: There's no evidence of his family, so it's sustained. Proceed.

[Prosecutor]: Mr. Booker had a family and a father. He had people who cared about him and these people are going to watch what you do, ladies and gentlemen, when you go back to deliberate just as much as [defendant]. They're watching you and they're—

[Defense Counsel]: Objection, Your Honor, this is improper.

[Court]: Overruled, overruled. Let's proceed.

. . . .

[Prosecutor]: And the last thought I want to leave you with, ladies and gentlemen, is this. What do you suppose were the last thoughts on Timothy Booker's mind before he died?

[Defense Counsel]: Objection, Your Honor, there's no evidence whatsoever as to his last thoughts.

[Court]: Counsel, this is argument, this is not evidence, and the jury's been instructed that way and have been told about four times in addition to that. You may proceed.

[Prosecutor]: I ask you not to forget Timothy Booker. I'm going to ask you to try to put yourself in Timothy Booker's place on the last night he lived and see what Timothy Booker felt. Ladies and gentlemen, you have an extraordinarily tough job ahead of you.

The prosecutor's first reference to the victim's family, as noted by the trial court, had no factual basis and, thus, the objection to it was properly sustained. But, the prosecutor continued to refer to the victim's family and compounded this error by asking the jurors to put themselves in the victim's place just before he died and to imagine what his thoughts were at that time. This is clearly an appeal to the jury's emotion in an attempt to inflame it improperly. Asking jurors to place themselves in the place of the victim is improper in and of itself. *E.g., State v. Long*, 684 S.W.2d 361 (Mo.App.1984).

Trial courts have a duty to ensure that every defendant receives a fair trial, which requires the exercise of its discretion to control obvious prosecutorial misconduct *sua sponte*. Unfortunately, in the instant case, the trial court did not exercise that discretion when defense counsel tendered timely objections, nor did it intervene *sua sponte* in other appropriate instances. The court erroneously overruled defense counsel's objections and never used its authority to minimize any prejudice by ordering the comments stricken or issuing cautionary instructions. To be sure, the court did admonish the jury that arguments of counsel are not evidence. This was a proper but an insufficient response to defense counsel's objections.

The prosecutor's requests to the jurors to place themselves in the place of the victim were neither isolated nor accidentally made. Their effect, therefore, was objectionable. Nonetheless, we have not adopted a *per se* rule of mandatory reversal in all cases in which objectional comments are made by a prosecutor. *E.g., State v. Woltering*, 810 S.W.2d 584, 588 (Mo.App.1991); *State v. Baker*, 741 S.W.2d 63, 66–67 (Mo.App.1987). "[E]rror which in a close case might call for a reversal may be disregarded as harmless when the evidence of guilt is strong." *State v. Degraffenreid*, 477 S.W.2d 57, 65 (Mo. banc 1972); *State v. Ford*, 639 S.W.2d 573, 576 (Mo. 1982).

We evaluate the facts of each case independently, and we will reverse a con-

viction only if the challenged comments had a decisive effect on the jury's verdict. *State v. Newlon*, 627 S.W.2d 606, 616 (Mo. banc 1982), *cert. denied*, 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982), *rehearing denied*, 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982) (comments made in punishment stage); *State v. Murphy*, 592 S.W.2d 727, 733 (Mo. banc 1979); *State v. Sanders*, 714 S.W.2d 578, 590 (Mo.App. 1986). Our courts have not defined "decisive effect." However, for the challenged comments to have had a "decisive effect", we believe, there must be a reasonable probability that, in the absence of these comments, the verdict would have been different.

Here, the comments were not decisive. The jury did not have a difficult time in determining the mental state of defendant at the time he beat and then shot the victim. The culpable mental state that distinguishes first degree murder from second degree is "deliberation". § 565.020.1, first degree; § 565.021.1(1), second degree. And, "deliberation", as properly defined for the jury, is manifested by "cool reflection upon the matter for any length of time no matter how brief". § 562.016; MAI–CR3d 313.02. Evidence that defendant had this culpable mental state was overwhelming.

Three eyewitnesses saw defendant beat Mr. Booker before he was shot, in an area that was "lit up ... like it was daytime." One of these witnesses, Mr. Cooper, the store clerk, was five to six feet away from the scene; the other two, Mr. Patton and Ms. Brooks, were twenty to thirty feet away. All three witnesses saw defendant repeatedly punch the victim and break a bottle over his head before the shooting. Mr. Patton and Ms. Brooks saw a gun in defendant's hand pointed at the victim, heard the gun misfire three times, then heard two shots and saw the victim fall to the ground. This evidence shows "deliberation."

Moreover, defendant admitted being at the scene and beating the victim. The only testimony of the eyewitnesses which he contradicted was that he shot the victim. Thus, the evidence was overwhelming for conviction. Any harm done by the prosecutor's objectionable comments was overwhelmingly outweighed by the properly admitted evidence. Absent the prosecutor's comments, the jury would still have found defendant guilty beyond a reasonable doubt.

We are aware of this Court's holding and teaching in *State v. Long, supra. Long* was a rape case. In order to give the male jurors a "graphic" depiction of the rape and to make the rape "personal enough", the prosecutor launched into a description of the rape with each male juror as the imagined victim. *Id.* at 363. At first, the trial court sustained the defense counsel's objection to the prosecutor personalizing the argument, but then the court overruled several subsequent objections. *Id.* at 363–364.

Over these objections, the prosecutor not only described the pain and horror of the rape in detail, with each male juror as the victim, but also detailed the subsequent physical examination each would have to undergo as well as the diminished ego and humiliation each would suffer, suspecting that any laughter was being aimed at each one of them. *Id.* at 363–364. In addition, the prosecutor suggested that each juror, as the victim, would "get a couple of shots to prevent venereal disease". *Id.* (See Appendix for verbatim argument).

In reversing the cause for retrial, this Court, in a five to four en banc decision, held that the prosecutor's closing argument was a deliberate effort to bias and prejudice the jury by substituting the jurors for the victim and was also erroneous because it was based, in part, on facts not in evidence. *Id.* at 366. The Court also expressly noted that the prosecutor's conduct was "directly condemned" by the ABA Standards for Criminal Justice, *Id.* at 365, and that the cause had to be retried even though it could not be contended the guilty verdict was not supported by the evidence. *Id.* at 366.

The argument in *Long*, however, is clearly distinguishable from the argument here both in strength and duration. In *Long*, the argument was extensive and made in

excruciating detail. It, rather than the evidence, was overwhelming. Here, although the challenged comments were not isolated, they were not extensive nor did they detail the pain, horror and suffering of the victim as was done in *Long.* Moreover, in *Long,* the majority opinion concluded the argument affected the jury's assessment of punishment. *Id.* at 365, 366. Here, the state did not seek the death penalty for murder, first degree, and, thus, the jury was directed to assess only one punishment if it found defendant guilty of murder, first degree. *Long* is comparable to *State v. Mobley,* 369 S.W.2d 576, 579–580 (Mo.1963) and *State v. Tiedt,* 357 Mo. 115, 206 S.W.2d 524, 528 (1947), in each of which the prosecutor, in closing argument, persistently and repeatedly overstepped the bounds of prosecutorial argument working overwhelming prejudice against the defendant.

Clearly, here, the argument of the prosecutor, Mr. Garrison, was objectionable.[3] However, in the context of the overwhelming evidence of guilt, his argument lacked the strength to require a reversal. *See, e.g., State v. Degraffenreid, supra,* 477 S.W.2d at 59 (Mo. banc 1972).

■ Defendant's next argument is neither clear nor explicit. Defendant apparently filed a pre-trial "motion to suppress identification". There is no copy of the motion in the file; and the record does not disclose which eyewitness's identification was sought to be suppressed, nor does it disclose whether an in-court-identification, an out-of-court identification, or both were sought to be suppressed. The trial court heard evidence on the "motion to suppress" and denied it.

In his Point on appeal, defendant contends the court erred in denying this motion "because [a] lineup was impermissibly suggestive", and, in this Point, defendant also contends the "in-court identification" violated his constitutional rights because it was "based on the impermissively suggestive out-of-court lineup." In his argument, defendant focuses on Mr. Patton's in-court identification of defendant.

Defendant has not preserved this undefined issue for review, because, at trial, he did not object to any of the eyewitnesses' identifications. *E.g., State v. Walker,* 743 S.W.2d 99, 103 (Mo.App.1988). Moreover, defendant has not requested us to review this issue as plain error. *Id.;* Rule 30.20. We do so, however, *ex gratia.*

The lineup was impermissibly suggestive, defendant contends, because defendant was five feet two inches tall and weighed one hundred thirty pounds and the three other individuals in the lineup were taller or thinner than defendant.

A lineup is not impermissibly suggestive merely because the individuals composing the lineup have dissimilar physical appearances. A reasonable effort to find physically similar participants is normally all that is required. Differences in age, weight, height, hairstyle and other physical characteristics do not, therefore, compel a finding of impermissible suggestiveness.
*State v. Cooper,* 708 S.W.2d 299, 305 (Mo.App.1986) (citations omitted).

At trial, the police officer who conducted the lineup testified that he "selected [the individuals in the lineup] based on the height, weight and physical characteristics of [defendant]." We have examined two photographs of the lineup as did the trial court. The photographs show four black males, reasonably similar in age and size. No one had a unique characteristic that would draw attention to him. Moreover, Mr. Patton identified defendant in this lineup, only a "couple of days" after the shooting. Furthermore, the record shows Mr. Patton did not receive any prompting or coaching from a police officer at the lineup. Thus, the lineup in issue was not impermissibly suggestive.

■ Defendant also attacks the testimony of Detective Gary Maher called by the state as a rebuttal witness. Ms. Brooks identified defendant as "Little

3. Again, we caution counsel that the ABA Standards for Criminal Justice state: "The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury." The Prosecution Function, Standard 3–5.8(c) (1986).

Herc". Defendant, during cross-examination, denied ever using, being known as or answering to the name of "Little Herc".

Detective Maher was called to rebut this testimony. He was a member of the Juvenile Division of the St. Louis Metropolitan Police Department in 1988, and, as part of his job, he checked on children who were not in school on school days. In May, 1988, some five months before Mr. Booker was shot, Detective Maher saw defendant with a group of other young men standing on a street corner during school hours. He asked each of them for identification. He asked defendant "what his street name was ... [and defendant] told [him] Little Herc." He immediately wrote that name down in his "field interview report".

Defendant objected to this testimony as inadmissible evidence of a prior crime. The trial court overruled this objection. Defendant now attacks this ruling on the same grounds.

Without case law support, defendant interprets certain statutes in Chapter 167 as defining "truancy" to be a crime. We disagree with this interpretation. However, assuming defendant's interpretation is correct, he still would not prevail.

Defendant's testimony put his identity in issue. Evidence of other crimes is admissible to establish a defendant's identity. *E.g., State v. Seaton,* 817 S.W.2d 535, 539 (Mo.App.1991).

■ Finally, defendant contends, the trial court improperly submitted our form instruction defining reasonable doubt, MAI–CR 3d 302.04, because the instruction, defendant contends, improperly lowers the reasonable doubt standard. Defendant relies on *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). Defendant's reliance on *Cage* is misplaced. *See, State v. Murray,* 744 S.W.2d 762, 771 (Mo. banc 1988), *cert. denied,* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *State v. Antwine,* 743 S.W.2d 51, 62–63 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988); *State v. Simpson,* 813 S.W.2d 323 (Mo.App.1991) *cert. denied,* —— U.S. ——, 112 S.Ct. 1209,

117 L.Ed.2d 448 (1992); *State v. Smith,* 806 S.W.2d 119, 121–122 (Mo.App.1991).

Defendant, with leave from this Court, has filed a *pro se* brief raising an issue on direct appeal from his convictions and sentences and an issue on appeal from the denial of his Rule 29.15 motion. In his direct appeal, defendant contends, the prosecutor committed prosecutorial misconduct when he allegedly failed to disclose a photograph of one of the lineups viewed by Mr. Patton and Ms. Brooks on September 21, 1988.

Defendant has not preserved this issue for review because he did not raise it at trial nor in his motion for a new trial. Rule 30.20; *State v. Bradshaw,* 779 S.W.2d 617, 619 (Mo.App.1989). Moreover, in his brief, defendant has not acknowledged that this issue was not preserved and has not requested this court to review the issue as plain error. *State v. Gillespie,* 792 S.W.2d 35, 36 (Mo.App.1990). Although defendant *pro se* is bound by the same procedural rules as a licensed attorney, *see, State v. Vandeventer,* 746 S.W.2d 658, 660 (Mo. App.1988), we review this issue *ex gratia.*

The record shows the state produced for defense counsel an exhibit list which included the lineup photograph defendant now claims was not produced. Moreover, at the hearing on defendant's motion to suppress identification, the state introduced the lineup photograph in issue. Thus, contrary to defendant's contention, defense counsel had at least two opportunities to view the lineup.

### Rule 29.15 Motion

Defendant's contention that his trial counsel was ineffective is neither clear nor explicit. As we understand his contention, it is twofold.

■ He first contends his trial counsel "failed to preserve his motion for Disclosure of First Line–Up–Photo." To us, this means he faults his counsel for failing to preserve the issue of the admissibility of the allegedly impermissibly suggestive lineup and of Mr. Pattons' testimony based upon that lineup.

We have demonstrated that this lineup was not impermissibly suggestive. Therefore, there would be no merit to an objection to the admissibility of the lineup and of testimony based upon it. Counsel cannot be faulted for failing to make a meritless objection. *Newman v. State*, 751 S.W.2d 93, 96 (Mo.App.1988).

██ Secondly, defendant contends his trial counsel failed "to investigate Angela Brooks". To us, this means his counsel did not discover that Ms. Brooks failed to identify defendant in a lineup which resulted in counsel's failure to object to her in-court identification of defendant.

Ms. Brooks did testify at trial that she was unable to identify defendant in a lineup. However, the record clearly shows her in-court identification was reliable. She saw defendant shoot Mr. Booker from twenty feet away in an area that was "lit up ... like daytime."

Judgments affirmed.

GRIMM, P.J., and CRANDALL, J. concur.

## APPENDIX

*State v. Long*, 684 S.W.2d 361, 363–364 (Mo.App.1984).

### Closing Argument

[Prosecutor]: Now, rape is an awful thing. [Defense attorney named] said at some point that you gentlemen perhaps do not understand it because of wives and daughters. Well, I'm going to give *you* a graphic, gentlemen, because that's just not *personal* enough I feel when *you're* on the jury. I want the ladies to bear with me for a minute because I want *you* gentlemen to imagine if *you* would yourself at—

[Defense Attorney]: Your Honor, this is improper, personalizing to the jury.

THE COURT: Yes, you should not personalize the argument to the jury. Sustained.

[Defense Attorney]: May the jury—

THE COURT: Jury instructed to disregard the personalization comment of counsel.

[Prosecutor]: Any man, any man, *you* are come upon, he's come upon by someone of superior strength grabs *you* around the throat, spins *you* around just to get *your* attention, gives *you* an uppercut in the solar plexus just to get *your* attention, someone far superior to you in strength throws *you* to the ground and to make sure *you* understand who is the boss kicks *you* a couple of times in the head and stomach and takes off *your* pants, he doesn't fondle *you*, he grabs *you*, twists *you*, squeezes to hurt *you*. This isn't an act of love. It's to humiliate *you*, but above all, to expose hatred, to hurt *you*.

[Defense Attorney]: Your Honor, improper argument is the *personalization of the jury* again AND *it's going beyond the scope of the evidence*.

THE COURT: Overruled.

[Prosecutor]: That's what happened to [the victim named]. Doesn't stop there for the victim of a rape. The next thing that happened—This applies *to everybody on the jury* as well as anybody in the world. The next thing that [the victim named] goes through is having to relate this story time after time after time first to the security guard, then *maybe* another one, then a police officer, then to the hospital and just after that terrifying experience—and what would presumably be a rather safe place in the world—broad, open daylight, 2:30, 3:00 o'clock in the afternoon, *you* go through this. Well, get up on the table and spread *your* legs. And after *you* have just been through this experience someone quite more gently probes into the various areas of *your* body to remove samples, get a couple of shots to prevent venereal disease—

[Defense Attorney]: You know, I don't think any of this is in the evidence. No facts. I know it's not. It's a deliberate misstatement of what he knows the truth—

[Prosecutor]: May my—

[Defense Attorney]: He wants to bias the jury. None of that is in evidence. I would—Some of it is in evidence but the *venereal disease*, that's not. That's not in evidence.

THE COURT: I'll rule it. I don't recall any evidence. The jury will be guided by what they recall the evidence to be on that score.

[Prosecutor]: Will my time be totaled?

During this couple of hours that *you're* at the hospital *you* hear laughter, *you* feel that they're *laughing* about *your* situation. It's not true but *you* feel it.

[Defense Attorney]: Objection to the making of facts to support some hypothesis.

THE COURT: Overruled.

[Defense Attorney]: This isn't in evidence.

THE COURT: This is closing argument. Overruled.

[Prosecutor]: Again, at the police station every time *you* hear somebody *laugh*, people are out, don't know about *your* situation, there's a feeling they're laughing at *you*.

[Defense Attorney]: Closing argument is directed to the evidence and the reasonable inferences. This is not a reasonable inference. It's not relevant.

[Prosecutor]: They saw this woman here.

THE COURT: Overruled.

[Prosecutor]: They saw what this lady had to go through. The next thing—*It's not in evidence* but it happened about a year later when it's almost hopefully put somewhat behind *you, you* have to come in here and in a fishbowl situation not only tell the people who have to hear but it's an open and public courtroom with people coming in and describe that incident. That, ladies and gentlemen, is the crime that was put upon [the victim named]. (emphasis added [by the *Long* Court] ).