EDWIN H. SMITH, Presiding Judge.
This is a consolidated appeal. The State of Missouri, appellant and cross-respondent, appeals from an order granting respondent’s Rule 29.15 motion to vacate judgment and sentence. Appellant asserts the motion court clearly erred in granting relief, after an evidentiary hearing, on movant’s Rule 29.15 motion asserting his claim for ineffective assistance of counsel due to counsel’s failure to object to a portion of the state’s closing argument. Respondent and cross-appellant, Earnest L. Buckner, cross-appeals from his conviction, following a jury trial in the Circuit Court of Jackson County, of one count of forcible sodomy, § 566.060, RSMo. Supp. 1992, from which he was sentenced to thirty years imprisonment. Respondent asserts two points on cross-appeal: 1) the trial court erred because he was not allowed to present evidence of the domestic situation between the victim and her husband which affected his theory of defense; and, 2) the trial court plainly erred by failing to sua spowbe declare a mistrial or, in the alternative, instructing the jury to disregard specific argument by the state during their closing argument.
FACTS
Viewed in the light most favorable to the verdict, evidence at trial reveals that in the early morning hours of January 22, 1993, Carma Dawson, the victim, was asleep in her home at 4411 East 17th Street when she was awakened by the sound of a snowball hitting against her bedroom window. When she looked out her window, she saw Earnest Buckner, the respondent, who asked her to come and let him in.
Upon opening the front door, she saw a police officer questioning respondent in front of her house. The officer asked respondent what he was doing on the side of the house. The officer also asked her if respondent was a relative to which she responded affirmatively. The officer then let respondent go and respondent proceeded into the victim’s home.
Once she admitted respondent into her home, the victim went upstairs to put on long underwear beneath her housecoat and to get some cigarettes. When she returned downstairs, the lights in the living and dining rooms which she had left on were off and it was dark. When she turned on the light, she saw respondent come out of the dining room without any clothes on. Respondent told her to turn off the light and proceeded toward her. She looked away and asked him why he was disrespecting her in her own home. He responded that she “knew what he wanted” and not to “play with him.” He then picked up a bottle full of coins from her entertainment center and swung it at her while walking toward her and saying “Bitch, you know what I want.” He also told her she had only *798 five minutes before he was going to kill her. Respondent then pushed her onto the sofa and told her he wanted to live in her basement only coming upstairs at night for sex. She cried and told respondent that what he was doing was not right because they were cousins. He told her she could try and run to the door or jump out the window but she was not thinking of her children and she should be asking the Lord for him to let her and her children live because he was going to kill them. During this, respondent would be calm and then very angry and then calm again.
At one point, he grabbed her by the arm and dragged her upstairs. He told her to kiss her kids goodbye because her five minutes were expired and if she awoke them he would bash in her head with some hand weights he had picked up along the way. The victim kissed her two sons and before she could kiss her daughter, respondent dragged her back downstairs. He threw her on the couch and ripped open her housecoat. He then pulled down her long underwear and without her consent placed his tongue on her vagina. She begged him to stop but he did not.
Respondent then bolted up as if something “snapped” and said “Bitch, you thought I wanted to fuck you.” He then began telling her his mother did not understand him, her mother was the only one who believed in him and his sister was the only one who understood him. He told victim that he wanted to love her fully and to take care of her and her kids. Respondent began picking up his things off the table and putting his personal property in his pants pockets. He put on gloves and started wiping off the objects that he had touched.
Respondent’s radical actions continued between 2 a.m. and 7:30 a.m. One of the victim’s sons woke up and sat at the top of the stairs crying because he felt ill. She was allowed to go see what her son wanted and she took him back to his room. She woke the other two children and told them to get dressed. She then went downstairs to see where respondent was. He seemed to be calmer, so she told him her son was not feeling well and she needed to take him to the hospital. She went back upstairs and got herself and the kids ready.
While the children were eating cereal, she told respondent that he could live in her basement in order to appease him. He said that he would leave around 11 a.m. and come back later. She told him if she was not home from the hospital to move the washer blocking the back door and let himself out the back because the front door would be dead bolted.
She took her children down the street to a groeery/liquor store where she called her aunt who placed a three-way call to the police. An officer was dispatched to the scene. The victim told the officer that respondent was in her house threatening to Mil her and her children and that he had tried to rape her. The victim and her children accompanied the officer back to the house to unlock the dead bolt. When unlocking the front door, she saw respondent walking towards her living room wearing only long underwear and eating a bowl of cereal. Respondent was arrested.
Respondent presented evidence and testified in his own behalf. The jury found respondent guilty of forcible sodomy and sentenced him to thirty years imprisonment. On March 9, 1994, respondent filed a pro se motion for postconviction relief which his attorney later amended. Respondent alleged that his trial counsel was ineffective for failing to object to a portion of the state’s closing argument. The trial court granted respondent’s motion after an evi-dentiary hearing. The State of Missouri appeals from the order granting respondent’s posteonvietion motion and respondent cross-appeals from the trial court’s judgment.
We will address the respondent/eross-ap-pellant’s direct appeal first.
I.
In Point I, cross-appellant asserts the trial court erred because he was not allowed to present evidence of the domestic situation between the victim and her husband which affected cross-appellant’s presentation of his theory of defense. Cross-appellant argues *799 that he was prepared to present evidence that a violent relationship existed between the victim and her husband, George Dawson and that Mr. Dawson also owed cross-appellant money that he was trying to collect. Cross-appellant’s theory of defense was that as soon as the victim allowed him into her home, she realized her husband might get angry and beat her so she fabricated the entire story.
A witness’s bias is always relevant. State v. Bounds, 857 S.W.2d 474, 476 (Mo.App.1993). The scope of the evidence used to show bias of a witness lies within the broad discretion of the trial court. Id. “Facts and circumstances that show bias may be shown either by cross-examination of the witness sought to be impeached or by extrinsic evidence.” State v. Foster, 854 S.W.2d 1, 4 (Mo.App.1993).
The Missouri Supreme Court addressed a similar scenario to the one at bar in State v. Madsen, 772 S.W.2d 656, 661 (Mo. banc 1989), cert. denied, 493 U.S. 1046, 110 S.Ct. 845,107 L.Ed.2d 840 (1990), where they held that evidence of the victim’s prior sexual relations with her boyfriend was not admissible even though defendant claimed she concocted the rape allegations to keep her boyfriend from getting mad because she was out all night. The court called the inference “tenuous, to put it mildly.” Id. The court further noted there was no testimony that her boyfriend had demanded an explanation. Id.
Here, there was no testimony that Mr. Dawson even knew or would ever know that cross-appellant was at the victim’s home on the night in question. Thus, the marital relationship between victim and Mr. Dawson is completely irrelevant as to the charges in this case. The trial court did not abuse its discretion by overruling defense motions and sustaining the state’s objections to the introduction of such evidence. Point denied.
II.
In Point II, cross-appellant contends the trial court plainly erred by failing to sua sponte declare a mistrial or, in the alternative, instructing the jury to disregard a portion of the state’s closing argument that included the prosecutor’s statement “... bring back a verdict that says with unmistakable clarity, we will not tolerate these crazy sex crimes anymore.” We will review for “plain error” because counsel failed to object to the allegedly egregious comments at trial. State v. Clark, 913 S.W.2d 399, 405 (Mo.App.1996).
This court cites State v. Clark for the plain error standard:
To be entitled to relief under the “plain error” rule, a defendant must go beyond a showing of demonstrable prejudice to establish “manifest prejudice ” affecting substantial rights, and even if the argument is improper, a conviction will be reversed only if it is established that it had a decisive effect on the jury’s verdict. State v. Parker, 856 S.W.2d 331, 333 (Mo. banc 1993). Because trial strategy is an important consideration in any trial, assertions of “plain error” concerning matters involving closing argument are generally denied without explanation. State v. Cobb, 875 S.W.2d 533, 537 (Mo. banc 1994), cert. denied, 513 U.S. -, 115 S.Ct. 250, 130 L.Ed.2d 172 (1994). (emphasis added).

Id.

A failure to object to the alleged egregious remarks at trial is fatal to cross-appellant’s claim of error. “Had a timely objection been made, the trial judge could have taken appropriate steps to make a correction if the remarks were improper because an admonition to the jury is usually sufficient to cure any prejudicial effect of prosecutorial comments.” Clark, 913 S.W.2d at 405; See State v. Kempker, 824 S.W.2d 909, 911 (Mo. banc 1992).
Here, due to counsel’s failure to object at trial, the trial court did not have the opportunity to correct the perceived improper comment and plain error is seldom present in an unobjected closing argument because a holding that would require the trial judge to interrupt counsel would present a myriad of problems. Kempker, 824 S.W.2d at 911; State v. Radley, 904 S.W.2d 520, 524 (Mo.App.1995). Trial judges are not expected to assist counsel in trying cases, and should act sua sponte only in exceptional *800 circumstances. Radley, 904 S.W.2d at 524. No such exceptional circumstances exist in this case.
Further, assuming, arguendo, that counsel’s failure to object was not fatal to cross-appellant’s argument, we believe it is clear that the comments on which cross-appellant now seeks review were within the bounds of proper closing argument. The trial court has wide discretion in controlling closing arguments. Clark, 913 S.W.2d at 405; State v. Twenter, 818 S.W.2d 628, 634 (Mo. banc 1991). The court’s rulings are reversible only for abuse of discretion where the argument is plainly unwarranted. State v. Moore, 620 S.W.2d 370, 373 (Mo. banc 1981).
Here, defense counsel made the following remark during closing argument:
Ladies and gentlemen, don’t let the State argue to you that you need to send a message to the community. Your job here is to look at the evidence and see if the evidence fits.
To which the state argued the following in rebuttal:
The police can arrest criminals, prosecutors can do their job and prosecute them, and judges can try them. But, ladies and gentlemen, the only place where we can really do the job of stopping these crazy sex crimes is in that jury room upstairs
I’m asking you to bring back a verdict of dignity, I’m asking you to bring back a verdict we can be proud of, and I’m asking you that you bring back a verdict that says with unmistakable clarity, we will not tolerated [sic] these crazy sex crimes anymore!
“A prosecutor may properly argue the prevalence of crime in the community, the personal safety of its inhabitants, the jury’s duty to uphold the law, and inferences from its failure to convict.” State v. Jeffries, 858 S.W.2d 821, 825 (Mo.App.1993). It is also permissible to “legitimately argue that the jury should ‘send a message’ that criminal conduct will not be tolerated or should be severely punished.” State v. Cobb, 875 S.W.2d 533, 537 (Mo. banc), cert. denied, — U.S. -, 115 S.Ct. 250, 130 L.Ed.2d 172 (1994).
The arguments asserted as error in this ease are very similar to those in Jeffries where no error existed:
These days you can hardly pick up a newspaper or turn on the television without hearing about or reading about the growing drug problem in the country. We have formed drug task forces to deal with the problem. Our president instituted a war on drugs, and we spend lots and lots of money trying to deal with this problem. You have probably said to yourself, somebody ought to do something about that. Well, ladies and gentlemen, I am here to tell you that you, the Jury, are the front line in the war on drugs. You can, by your verdict of guilty and by the sentence you impose in this ease, send a message to those that would bring this poison into Audrain County that if you do so you are going to be dealt with and you are going to be dealt with very severely.
Id. at 824-25.
Further, “[a] defendant may not provoke a reply to his own argument and then assert error.” Parker, 886 S.W.2d at 922. A prosecutor has considerable leeway to make retaliatory remarks in closing argument. Id.
Here, cross-appellant was the first to argue the issue of “sending a message” to the community from which they all but invited the cross-respondent to respond. As a result, he cannot now claim error from his actions. Furthermore, cross-respondent’s argument was clearly within the bounds of appropriate closing argument thereby no abuse of discretion existed. Point denied.
III.
In Point III, appellant contends the motion court clearly erred in granting postconvietion relief, after an evidentiary hearing, on mov-ant’s Rule 29.15 motion asserting his claim of ineffective assistance of counsel due to counsel’s failure to object to a portion of the state’s closing argument. The remarks appellant claims as error are the same remarks reviewed in Point II supra.
*801 Appellate review of the trial court’s action on a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(j); State v. Parker, 886 S.W.2d 908, 929 (Mo. banc 1994), cert denied, — U.S. —, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995). For a finding or conclusion of the motion court to be clearly erroneous, we must be left with “the definite and firm impression that a mistake has been made.” Parker, 886 S.W.2d at 929.
Here, the trial court’s findings of fact and conclusions of law contain the following:
In State v. Durbin, the Missouri Court of Appeals dealt with the issue of improper closing arguments by the state. 885 S.W.2d 323 (Mo.App.1992). When defense counsel fails to object to an improper closing argument it should be determined whether absent counsel’s failure the jury would have had a reasonable doubt respecting defendant’s guilt. Id. at 326. The court also noted that when there'is overwhelming evidence of guilt an improper argument by the state is not viewed as having a decisive effect on the jury’s decision. Id.
The portion of the state’s argument that movant alleges his trial counsel should have objected to here is clearly improper. It wasn’t directed at movant’s guilt or innocence based on the evidence but was designed to focus the jury’s attention on the particularly distasteful nature of sex crimes in general. It is also very possible that had counsel objected and the jury been instructed to disregard that part of the state’s argument they may have had a reasonable doubt as to his guilt. Finally, it is apparent from the record and transcript in movant’s case that the overwhelming evidence of guilt the Court of Appeals spoke of is not present here. In fact the only evidence of movant’s guilt was the testimony of the victim. It is also clear from the transcript that at least some members of the jury did not feel they had enough evidence and that the jury as a whole had a difficult time coming to a decision. These factors support the conclusion that the state’s improper argument may well have had an effect on the jury’s deliberations and in light of that trial counsel’s failure to object rose to the level of ineffective assistance of counsel.
In order to prevail on a claim of ineffective assistance of counsel, the defendant must prove:
... that counsel’s performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney, and that the defendant was thereby prejudiced. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Wise, 879 S.W.2d 494, 524 (Mo. banc 1994). To prove prejudice, the defendant must show a “reasonable probability that, but for counsel’s errors, the result of the proceeding would have been different.” State v. Shurn, 866 S.W.2d 447, 468 (Mo. banc 1993), cert. denied, — U.S.—, 115 S.Ct. 118,130 L.Ed.2d 64 (1994).
Id “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” State v. Nolan, 872 S.W.2d 99, 104 (Mo. banc 1994). The prejudice prong may be reviewed first and if it is easier to dispose of the issue on such ground, the appellate court may do so. State v. Ervin, 835 S.W.2d 905, 929 (Mo. banc 1992), cert. denied 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).
We determined that the remarks appellant claims were improper were not objectionable. They constituted proper argument in response to the arguments made by appellant’s trial counsel and do not constitute prejudice. Further, “[a]n attorney will not be held to be ineffective for failing to make a non-meritorious objection.” Clark, 913 S.W.2d at 406; State v. Six, 805 S.W.2d 159, 168 (Mo. banc 1991), cert. denied 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991). As we found in Point II supra, appellant’s remarks during closing argument were within the bounds of a proper closing argument. Respondent’s trial counsel cannot be held to be ineffective for failing to object to proper closing remarks.
For the foregoing reason, the trial court’s findings as to ineffective assistance of counsel were clearly erroneous in that we are left *802 with a firm impression that a mistake was made by the trial court.
CONCLUSION
Respondent’s convictions and sentences are affirmed. The motion court’s order granting respondent’s Rule 29.15 motion is reversed.
All concur.