**STATE of Missouri, Plaintiff–Respondent,**

v.

**Paul R. WRIGHT, Defendant–Appellant.**

**Paul WRIGHT, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

Nos. 20134, 21007.

Missouri Court of Appeals,
Southern District,
Division One.

April 8, 1997.

878

Barbara Hoppe, Asst. Public Defender, Columbia, for defendant–appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Cheryl A. Caponegro, Assistant Attorney General, Jefferson City, for plaintiff–respondent.

BARNEY, Judge.

Following a jury trial, Paul R. Wright (Defendant) was convicted of robbery in the first degree, § 569.020;[1] assault in the first degree, § 565.050; and armed criminal action, § 571.015. He was sentenced to 17 years on each count, to run concurrently.

Defendant does not challenge the sufficiency of the evidence to support the conviction. We consider the facts and all reasonable inferences therefrom in the light most favorable to the verdict and reject all contrary evidence and inferences. *State v. Crews,* 923 S.W.2d 477, 478 (Mo.App.1996).

In the early morning hours of Tuesday, September 6, 1994, Defendant entered the Taylor Food Mart in Kennett, Missouri, where Unice Mungle was working as a clerk. As Defendant entered the store, Ms. Mungle went behind the counter. Defendant purchased a package of cigarettes and then inquired about a soda. Ms. Mungle thought that Defendant had left the store so she began to come out from behind the counter to resume her pricing and stocking duties.

Ms. Mungle heard a noise behind her and then something hit her on the back of the head. She fell onto her knees and face and everything went black for a brief moment. When she opened her eyes she saw Defendant leaning over her so she began to kick him. Defendant then began kicking her, grabbed her by the arm and shoved her behind the counter. He then pushed her back against the cash register and stabbed her in the stomach with a Phillips head screwdriver. Although Ms. Mungle could not find the button for the alarm, she was able to open the cash register and then get away from Defendant. Ms. Mungle then ran into the store's office and dialed 911.

Defendant raises two points in his direct appeal. First, he asserts the trial court erred in admitting testimony regarding Defendant's prior bad acts and uncharged crimes. Second, he asserts the trial court erred in overruling Defendant's objection to statements made by the prosecutor during closing argument that referenced additional bad acts and uncharged crimes not in evidence. Defendant also appeals the denial of his Rule 29.15 motion after an evidentiary hearing as trial counsel failed to object to the prosecutor's "send a message" statements made during closing argument. The appeals have been consolidated herein.

**Case No. 20134—Direct Appeal**

In Defendant's first point, he alleges that the trial court erred in admitting evidence of prior bad acts and uncharged crimes. Specifically, Defendant objects to the admission of the testimony of Sara Abraugh and Officer Gordon Crawford.

In response to a motion in limine filed by Defendant, the trial court initially ruled that the State could not introduce any evidence relating to a prior burglary allegation without further proceedings outside the hearing of the jury.

During the trial, Defendant presented the testimony of Flent Swain to establish an alibi defense. Mr. Swain's testimony contained the following statements:

Q [By Defense Counsel]: Do you recall how long Paul stayed with you?

A: He stayed with me that Friday to up until that Tuesday morning.

Q: Okay. Were you with him the whole time?

A: Oh, yeah. I was with him the whole time.

Later, during the State's cross-examination of Mr. Swain, he stated the following:

Q [By the State]: Okay. Now, I believe you already testified that basically from Friday morning until Tuesday morning when you dropped him off down at Blytheville that he was basically never out of your sight; is that correct?

A: No, he sure wasn't.

Q: Okay.

A: Not out of my sight, he wasn't.

Q: Wasn't out of your sight on Sunday night?

A: No.

Q: Or Monday evening?

A: No.

---

1. All statutory references are to RSMo 1994.

In response to this testimony, out of the hearing of the jury, the State made an offer of proof of the testimony of two rebuttal witnesses, Sara Abraugh and Officer Gordon Crawford.

The State's offer of proof showed that Ms. Abraugh would testify that Defendant had been staying with her neighbor, Christie Sharkey but that on Sunday, September 4, 1994, Defendant stayed with Ms. Abraugh, as Ms. Sharkey and Defendant had a fight. Further, Ms. Abraugh would testify that Defendant returned to Ms. Sharkey's house the following evening, on Monday, September 5, 1994. Ms. Sharkey and Defendant engaged in another argument and Ms. Sharkey called the police. This fight arose because Ms. Sharkey believed that Defendant had stolen from her when he stayed with her the prior week.

Officer Crawford would testify that he responded to a dispatch call on the evening of September 5, 1994, at approximately 8:00 p.m., regarding an argument. He would testify that Ms. Sharkey and Ms. Abraugh reported an argument between Ms. Sharkey and Defendant and that the reason for the argument was because Ms. Sharkey believed Defendant had stolen from her.

Over defense counsel's objection, the testimony of the two witnesses was allowed to be presented to the jury. However, the trial court ordered that there be no mention from either of the witnesses that Ms. Sharkey believed that Defendant had stolen from her.

Defendant contends the testimony of Officer Crawford should not have been presented to the jury even though Officer Crawford made no mention of Ms. Sharkey's allegations of theft. Additionally, Ms. Abraugh should not have been permitted to mention that Ms. Sharkey called the police. Defense counsel made the following, additional objection even after the trial court excluded any mention of the alleged theft perpetrated by Defendant:

But, Your Honor, I don't mean to just keep on with this point, but you have a police officer there, Your Honor. People can recognize that a police officer is there to take a report, usually, on a crime, Your Honor. And that's so blatant for this Court to allow the Prosecutor to bring that in. It just screams a crime. And it will tempt that jury to convict my client of not—of not looking at just this act but looking at him as a criminal. That's why we have these rules of evidence. That's why we're doing this out of the hearing of the jury.

The trial court again overruled the objection and allowed the testimony of both Officer Crawford and Ms. Abraugh.

■■■ " 'Generally, evidence of separate and distinct crimes is inadmissable because it breaches defendant's right to be tried only for the crimes with which he is charged.' " *State v. Askew*, 822 S.W.2d 497, 501 (Mo.App. 1991). Also "evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes." *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993).

■■■ " 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; [or] (5) the identity of the person charged with the commission of the crime on trial.' " *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992); *see also Bernard*, 849 S.W.2d at 13.

■■■ "Evidence of prior misconduct that does not fall within one of the five enumerated exceptions may nevertheless be admissible if the evidence is logically and legally relevant." *Id.*; *see also State v. Gateley*, 907 S.W.2d 212, 221 (Mo.App.1995). As a general rule, evidence is logically relevant if it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial. *Bernard*, 849 S.W.2d at 13; *State v. Aye*, 927 S.W.2d 951, 956 (Mo. App.1996). Evidence is legally relevant if its probative value outweighs its prejudicial effect. *Bernard*, 849 S.W.2d at 13; *Aye*, 927 S.W.2d at 956. "The balancing of the effect and value of evidence rests within the sound discretion of the trial court." *Bernard*, 849 S.W.2d at 13.

Defendant's complaint about the testimony is that the jury would be certain to infer that a crime had occurred because the police were called. The trial court was very careful, however, in that it did not allow the State to make any mention of the fact that Ms. Sharkey believed that Defendant had stolen from her. There was no prior, uncharged bad act or crime even mentioned by the State. It is just as reasonable to assume that the jury would infer the police were called for the very reason that was mentioned in the testimony, that is, the argument that took place between Ms. Sharkey and Defendant.

■ Even assuming that the testimony of Ms. Abraugh and Officer Crawford inferred a prior, uncharged bad act, the evidence was both logically and legally relevant. It was logically relevant in that it tended to establish Defendant's guilt by discrediting Defendant's alibi defense witness, Flent Swain. Mr. Swain testified that Defendant was not out of his sight from Friday until Tuesday. Ms. Abraugh's testimony directly refutes the credibility of that witness as she testified that he stayed with her on the night of Sunday, September 4, and was there again on the evening of September 5. On that evening, Ms. Sharkey came over to her house, the argument erupted, and the police were called. Officer Crawford's testimony lent additional support to Ms. Abraugh's testimony in that an official report was made about the incident, further supporting the State's contention that Mr. Swain was not credible.

■ In addition, the probative value of the evidence outweighed its prejudicial effect. As previously mentioned, the testimony established that Defendant's alibi witness was not credible. Any prejudice Defendant may have suffered was far outweighed by the probative value of the testimony. Point One is denied.

In his second point, Defendant contends the trial court erred in overruling defense counsel's objection to statements made by the State during closing argument regarding bad acts and uncharged crimes not in evidence. Specifically, Defendant complains that the State argued Defendant had purchased drugs with the proceeds from the robbery and that the jury was told that now was the time they could do something about crimes they read about in the newspaper. Defendant claims that he was prejudiced by these statements in that the jury convicted him, not because of the crimes charged, but because of "other crimes" that the jury reads about in the newspaper.

■ Trial courts have broad discretion in controlling closing arguments. *State v. Buckner*, 929 S.W.2d 795, 800 (Mo.App.1996). The trial court enjoys considerable discretion in determining whether comments made in closing arguments are prejudicial and in making appropriate rulings based on those determinations. *State v. Long*, 768 S.W.2d 664, 666 (Mo.App.1989). The trial court's rulings are reversible only for abuse of discretion where the argument is plainly unwarranted. *Buckner*, 929 S.W.2d at 800. An abuse of discretion will not be found unless the statements were clearly unwarranted and had a decisive effect on the jury. *State v. Davis*, 825 S.W.2d 948, 951–52 (Mo.App. 1992). Comments have a decisive effect when there is a reasonable probability that, in the absence of these comments, the verdict would have been different. *State v. Roberts*, 838 S.W.2d 126, 132 (Mo.App.1992).

There was evidence adduced at trial that when Defendant arrived in Blytheville and reported to his employer, he was given a $25 advance on his pay. During defense counsel's closing argument, the following statement was made:

Mr. Swain testified that he had paid for [Defendant's] expenses during the course of that weekend. [Defendant] didn't need to go out and rob anybody, ladies and gentleman. His expenses were paid. He had a ride down to Blytheville. He didn't need money to go down there.

[Defendant's employer in Blytheville] also testified that when [Defendant] got there on ... Tuesday morning, September 6th, that he borrowed $25 from him. Ladies and gentlemen, why would you borrow $25 from somebody if you had gone out four and a half hours before and robbed a convenience store of over $50? I don't think that he could have spent the $50 or

$60 in Kennett, Missouri anywhere. Mc-Donald's doesn't even open until 6:00 o'clock in Kennett, Missouri.

In response to this statement, the prosecutor drew defense counsel's objection by arguing the following:

> Ms. Bolton said she can't imagine where somebody could spend $50. First of all, I submit it wasn't necessarily to spend the money. Like I said before, just because you've got some money in your pocket doesn't mean you're going to—not going to ask your employer if you can borrow a little bit more to have in your pocket.
>
> But aside from that, assuming he didn't have a nickel left out of that $50 or so that he stole out of the cash register, I submit to you there are places in Kennett where at 3:00 o'clock in the morning you can find to spend $50. There are people standing on street corners here who will trade you something for your $50—

DEFENSE COUNSEL: Your Honor, I object to that.

PROSECUTOR:—at all hours of the night.

DEFENSE COUNSEL: The Prosecutor's arguing facts that did not come into evidence.

THE COURT: All right. This is merely argument. The objection's overruled. Proceed.

PROSECUTOR: Thank you, Your Honor.

> Now, ladies and gentlemen, a lot of times you read in the newspaper about incidents like this happening and you think to yourself, "When are they going to do something about stuff like this?" Well, the time is now and you're the "they."
>
> The police can investigate these things. They can arrest people and bring them into court, and I can file charges and bring the witnesses in here. The Clerk can swear those witnesses in. The Bailiff can bang the gavel and bring court to order. The Judge can make his rulings. The Reporter can take this all down. But it all comes down to you.
>
> It is now your part. It is now the time for you to send a message to the people of Dunklin County telling them that robbery and assaults like this are not tolerable in

our society. That Mr. Wright can't go into that Taylor Food Mart and beat Ms. Mungle over the head with a soda bottle and stab her with a screwdriver.

Defendant asserts that in making the above statements, the State is implying Defendant was involved in a drug transaction in the middle of the night after the robbery occurred. Defendant argues that, as there was no evidence in the record that he had been involved in the use or purchase of drugs, it was error for the trial court to overrule the objection. Furthermore, Defendant contends that when the prosecutor stated that the jury had heard of "incidents like this happening" that he was continuing to reference an alleged drug purchase that was not in evidence.

■ However, taken in context, it is apparent that the latter statement was not referencing other, uncharged crimes but was dealing with the crime charged. The "incidents" the prosecutor is referring to are clearly the "robbery and assaults" that are "not tolerable in our society" and not an alleged drug purchase made on the streets of Kennett at 3:00 o'clock in the morning. It is "permissible to 'legitimately argue that the jury should "send a message" that criminal conduct will not be tolerated or should be severely punished.'" *Buckner,* 929 S.W.2d at 800.

Defendant also argues that it was improper for the State to make the comment that "[t]here are people standing on street corners here who will trade you something for your $50." The State contends this statement was made in retaliation to defense counsel's statement that Defendant would have nowhere to spend $50 at 3:00 o'clock in the morning in Kennett, Missouri, and therefore, there was no reason for him to commit the robbery.

■ A prosecutor has considerable leeway to make retaliatory arguments at closing. *State v. Parker,* 886 S.W.2d 908, 922 (Mo. banc 1994), *cert. denied* in —— U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995). It is proper for a prosecutor to retaliate to an issue raised by Defendant's closing argument even if the prosecutor's argument would oth-

erwise be improper. *State v. Plummer*, 860 S.W.2d 340, 350 (Mo.App.1993). "When responding to an issue raised in the defendant's closing argument, the prosecutor can go further than the normal bounds of closing arguments." *State v. Davenport*, 924 S.W.2d 6, 12 (Mo.App.1996).

■ While this court agrees the State's comment may have overstepped the bounds of permissible argument, "we have not adopted a *per se* rule of mandatory reversal in all cases in which objectional comments are made by a prosecutor." *Roberts*, 838 S.W.2d at 131. We reverse a conviction only if the challenged comments had a decisive effect on the jury. *Id.* at 131–32; *Davis*, 825 S.W.2d at 951–52. " '[E]rror which in a close case might call for a reversal may be disregarded as harmless when the evidence of guilt is strong.' " *Roberts*, 838 S.W.2d at 131.

■ Here, there is no indication that the comments were decisive. Ms. Mungle identified Defendant as her attacker on two different occasions. Additionally, the credibility of Defendant's alibi witness was seriously called into question by the State's witnesses. In view of this, it cannot be said the prosecutor's remarks caused the jury to return a verdict different from that which would have been returned. *See, e.g., Davis*, 825 S.W.2d at 952; *Roberts*, 838 S.W.2d at 132. Point Two is denied.

The judgment of the trial court in Case No. 20134 is affirmed.

Case No. 21077—Postconviction Relief

Paul Wright (Movant) appeals from the denial of his Rule 29.15 motion after an evidentiary hearing. Movant contends that counsel was ineffective in failing to object to the prosecutor's "send a message" statement during closing argument. The comment about which Movant complains reads as follows:

It is now the time for you to send a message to the people of Dunklin County telling them that robbery and assaults like this are not tolerable in our society.

Movant contends this comment urged the jury to convict him for reasons other than the evidence and because trial counsel did not object, a direct appeal would have failed under plain error review. Movant's contention is without merit.

■ Appellate review of an order overruling a Rule 29.15 motion is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. *State v. Driver*, 912 S.W.2d 52, 54 (Mo. banc 1995); *Davenport*, 924 S.W.2d at 13. Findings and conclusions are deemed clearly erroneous only if a review of the entire record leaves this Court with a definite and firm impression that a mistake has been made. *Gallimore v. State*, 924 S.W.2d 319, 320 (Mo. App.1996).

To prevail on a claim of ineffective assistance of counsel, Movant must show that counsel failed to provide reasonably effective assistance and that Movant was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Gray*, 887 S.W.2d 369, 380–81 (Mo. banc 1994), *cert. denied* ── U.S. ──, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). Absent a showing to the contrary, counsel is presumed to have provided effective assistance. *Wilhite v. State*, 845 S.W.2d 592, 594–95 (Mo.App.1992).

It is well established that " '[a] prosecutor may properly argue the prevalence of crime in the community, the personal safety of its inhabitants, the jury's duty to uphold the law, and inferences from its failure to convict.' " *Buckner*, 929 S.W.2d at 800. It is also permissible to legitimately argue that the jury should "send a message" that criminal conduct will not be tolerated or should be severely punished. *Id.; see also State v. Pate*, 859 S.W.2d 867, 871–72 (Mo.App.1993).

■ Even if trial counsel had objected to the prosecutor's statements, the objection would have been unsuccessful as these types of arguments are permissible. "An attorney will not be held to be ineffective for failing to make a non-meritorious objection." *State v. Clark*, 913 S.W.2d 399, 406 (Mo.App.1996); *see also State v. Six*, 805 S.W.2d 159, 168 (Mo. banc 1991), *cert. denied* in 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991).

Movant has failed to demonstrate that trial counsel was ineffective. The judgment of the motion court is affirmed.

GARRISON and PREWITT, JJ.

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.