**STATE of Missouri, Respondent,**

v.

**Jarrett L. MATCHETT, Appellant.**

No. 23828.

Missouri Court of Appeals,
Southern District,
Division Two.

July 12, 2001.

Irene Karns, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for respondent.

BARNEY, Chief Judge.

Jarrett L. Matchett ("Defendant") was convicted of first degree burglary, § 569.160, attempted statutory rape in the first degree, § 566.032, and statutory sodomy in the first degree, § 566.062, following a jury trial.[1] The trial court sentenced Defendant to fifteen years for first degree burglary, fifteen years for attempted statutory rape in the first degree, and fifty years for sodomy in the first degree, to be served consecutively in the Missouri Department of Corrections. Defendant raises three points of error. We affirm.

In his first point, Defendant contends that the trial court erred in denying his motion to suppress the out of court identification of Defendant by the victim, due to the suggestive nature of the photo identification. In his second point, Defendant argues the trial court erred when, over the objection of Defendant, it allowed hearsay evidence which improperly bolstered the credibility of the victim's testimony. In his third point, Defendant maintains the trial court erred in denying Defendant's request for a mistrial based upon improper

---

1. Statutory references are to RSMo 2000, unless otherwise stated.

closing argument of the prosecutor in discussing excluded evidence and because this argument had a significant effect on the jury's verdict.

■ Defendant does not contest the sufficiency of the evidence. "All evidence and inferences will be viewed in the light most favorable to the ruling of the trial court and we will disregard all contrary evidence and inferences." *State v. Evenson*, 35 S.W.3d 486, 488 (Mo.App.2000); *see State v. Mitchell*, 20 S.W.3d 546, 552 (Mo.App. 2000).

B.Z.[2], a nine-year old girl, lived with her parents, four brothers, and one sister in a two-story dwelling in Morgan County. In the early morning hours of June 7, 1998, B.Z. was awakened from her sleep by a strange man, whom she later identified as Defendant.[3] Defendant crawled into bed with B.Z. and tried "to put his penis into [her] private." B.Z. tried to scream for help, but Defendant placed his hand over B.Z's mouth and told her to be quiet or "he'd hurt [her] real bad." B.Z. told Defendant that she needed to go to the bathroom and led him out of her room towards her parent's bedroom door. However, Defendant stopped B.Z. and made her go downstairs with him. B.Z. started to walk into the downstairs bathroom, turned around, and was able to see Defendant's face. Defendant then took B.Z. into the parlor, where he attempted to place his penis in her vagina and in her rectum. After this, Defendant told B.Z. to suck his penis, and Defendant pushed her head up and down on his penis. Defendant then told B.Z. to turn around as he dressed and then took her back upstairs. He told her to get back in bed and instructed her not to tell anyone or "[h]e'd hurt [her] real bad."

Exactly two weeks later, on June 20, 1998, B.Z. was alone in her room, and was again awakened by Defendant. This time, Defendant picked her up, carried her downstairs, and tried to put his penis in her "private ... on the front." Before leaving, he told her to go back to her bed and not to go to anyone else's room or come out of her bed. B.Z. later told her cousin, L.Z., about what had happened. L.Z. wrote a note to her mother, B.Z.'s aunt, who in turn told B.Z.'s mother. B.Z.'s parents contacted the Morgan County Sheriff's Dept. on July 27, 1998. The next day, Detective Tommy Capps ("Det.Capps") of the Morgan County Sheriff's Dept. interviewed B.Z. about what had happened.

On the evening of July 29, 1998, B.Z.'s father, ("H.Z.") heard the screen door banging and got up to investigate. When H.Z. reached the kitchen, he observed an intruder outside trying to quiet a dog. H.Z. then saw this person reach to open the door. At this point, H.Z. turned the flashlight he had with him on and shined it in the intruder's face. The intruder took off running and H.Z. chased him, but was unable to stop him from driving off in a vehicle.

On August 3, 1998, Det. Capps returned to B.Z.'s home with a photo lineup. H.Z. identified Defendant as the person he observed on the night of July 29. Later that night, when B.Z. returned home from the doctor, Detective. Capps showed the photo lineup to her and she pointed to Defendant and stated, "[t]hat's the man. That's the person." Defendant was subsequently

---

**2.** We use initials to protect the privacy of the young victim and her family.

**3.** B.Z. shared a room with her sister, but on this night her sister was staying over at a friend's house.

charged with burglary, statutory rape, and statutory sodomy.

In his first point, Defendant argues that the trial court erred in overruling Defendant's motion to suppress B.Z.'s out-of-court identification because of suggestive police procedures, discussed *infra*, used by the Morgan County Sheriff's Department. Defendant also argues that B.Z.'s identification of Defendant at trial resulted from her out-of-court identification and should be suppressed as well.

 "In reviewing a trial court's rulings on motions to suppress, this court will look only to whether the evidence was sufficient to support the ruling and we will not substitute our judgment for that of the trial court." *Evenson*, 35 S.W.3d at 488. The trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous. *Id.* In order to exclude identification testimony, Defendant "must show: (1) the pretrial identification procedure was impermissibly suggestive, and (2) the suggestive procedure made the identification at trial unreliable." *State v. Williams*, 18 S.W.3d 425, 431–32 (Mo.App. 2000); *State v. Vinson*, 800 S.W.2d 444, 446 (Mo. banc 1990). However, if Defendant fails to show the first requirement, the appellate court need not consider the second. *Williams*, 18 S.W.3d at 432.

Defendant argues that the out-of-court identification by B.Z. was impermissibly suggestive because of the manner in which the lineup was arranged by Det. Capps. At the hearing on Defendant's motion to suppress identity, Det. Capps testified that he had received information that the suspect was a slender male, with long, curly, blond hair, and was not very old. The photo lineup consisted of six different individuals. There were two photographs of each person placed next to one another and the individuals were numbered one through six. All of the photos were in color. Each of the pictures showed an individual with long hair that ranged from light blond to light brown. Four of the individuals had a moustache, although Defendant was not one of them.

Det. Capps took the photographic lineup to B.Z.'s home on August 3, 1998. She was not home at the time, but H.Z. was present and he identified Defendant as the person that he observed attempting to enter his home on July 29. Det. Capps advised H.Z. not to speak with B.Z. about the lineup and at trial, H.Z. testified that he did not discuss the lineup with his daughter. Det. Capps returned to the home the same evening, after 10 p.m., and talked with B.Z. about the lineup before showing it to her. He advised B.Z. that the man may or may not be in the photo lineup. As previously set out, upon showing her the lineup, she immediately pointed out Defendant. The lineup took place less than two months from the time B.Z. had observed Defendant.

 To the extent that the other photo's differ in physical appearance from that of Defendant, the differences merely set one individual apart from another. *Williams*, 18 S.W.3d at 432. "Dissimilarity in physical appearance alone is insufficient to establish impermissible suggestion." *Id.* "The police are not required to act as theatrical casting agents." *State v. Solomon*, 7 S.W.3d 421, 425 (Mo.App.1999). "The law does not require exact conformity to ensure an untainted identification procedure." *Williams*, 18 S.W.3d at 432.

 Here, the record does not show that Det. Capps gave B.Z. any indication that Defendant was the man who assaulted her when presenting her with the photographs. The hair color and length of hair of the various photographs were similar and there was nothing in particular that immediately distinguished Defendant's

photographs from the others presented. Neither was there evidence presented at trial suggesting that B.Z. received assistance from any other person when she identified the Defendant. *Id.* Thus, her identification of Defendant was not tainted, either during the pre-trial photo identification procedure or at trial. Therefore, we determine that Defendant failed to show that the pretrial photo identification of Defendant was impermissibly suggestive. Accordingly, we need not consider whether the suggestive procedure made B.Z.'s identification at trial unreliable. *Id.* Point denied.

In his second point, Defendant alleges that the trial court committed error and abused its discretion in admitting inadmissible hearsay from two witnesses whom Defendant argues improperly bolstered the credibility of B.Z. as a witness. This testimony was introduced by the State when it called Deputy Necole Olmstead ("Dep. Olmstead") of the Morgan County Sheriff's Department and Nurse Practitioner Linda Hancik ("Nurse Hancik") to testify about what B.Z. had told them relating to Defendant.

The trial court is afforded broad discretion and wide latitude in admitting and excluding evidence at trial. *State v. Mathews*, 33 S.W.3d 658, 660 (Mo.App. 2000); *State v. Dunn*, 21 S.W.3d 77, 84 (Mo.App.2000). We find error in the trial court's decision only when this discretion has been shown to be clearly abused. *Dunn*, 21 S.W.3d at 85. Only when its decision is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration" can it be said that the trial court has abused its discretion.

*Mathews*, 33 S.W.3d at 660 (quoting *State v. Brown*, 939 S.W.2d 882, 883–84 (Mo. banc 1997)).

At trial, B.Z. was questioned extensively by both the State and Defendant's trial counsel concerning the events of June 6 and June 20, 1998. The trial took place in early June of 2000, almost two years from the time of the incidents. B.Z. testified that Defendant had "put his penis into my private" and had "put it [his penis] into my butt." When Defendant's trial counsel questioned B.Z., he asked her whether Defendant's penis had actually penetrated her. She replied, "I don't think it did, but I'm not sure." In an effort to impeach B.Z.'s credibility, Defendant's trial counsel then asked B.Z. about prior statements she had made during a hearing on Defendant's motion to suppress about Defendant putting his penis in her "private." On redirect, the State asked B.Z. what she had told Dep. Olmstead and Nurse Hancik about the sexual incidences, and B.Z. responded that she did not remember what she had told either of them.

The State later called Dep. Olmstead and Nurse Hancik to testify about statements B.Z. had made to them which contradicted some of B.Z.'s trial testimony. Dep. Olmstead testified that B.Z. told her that Defendant "tried to make a baby with me." Nurse Hancik testified that B.Z. told her that Defendant had "tried to put his penis in her vagina but was unable to do that" and that Defendant "tried to put his penis in her rectum, and that also was apparently inadequate and didn't occur." While Defendant's trial counsel argued that these statements were inadmissible hearsay, the State countered that these were inconsistent statements under section 491.074, and should be admitted.[4] The

4. Section 491.074 states:

Notwithstanding any other provisions of law to the contrary, a prior inconsistent

trial court allowed the statements to be entered in as evidence.

■■■■ "Inconsistent statements are available as substantive evidence, and may be used just as soon as the inconsistency appears from the testimony." *State v. Norville,* 23 S.W.3d 673, 680 (Mo.App. 2000) (quoting *State v. Bowman,* 741 S.W.2d 10, 13–14 (Mo. banc 1987)). "A party may impeach his own witness with a prior inconsistent statement without a showing of surprise or hostility." *State v. Hicklin,* 969 S.W.2d 303, 309 (Mo.App. 1998); *see State v. Phillips,* 940 S.W.2d 512, 520 (Mo. banc 1997). The trial transcript reflects that Defendant's trial counsel asked B.Z. about inconsistencies in her testimony. The State asked B.Z. if she could remember what statements she made to Dep. Olmstead and Nurse Hancik. B.Z. stated that she could not. A proper foundation was laid to introduce the testimony of Dep. Olmstead and Nurse Hancik regarding statements B.Z. made to them that were inconsistent with B.Z.'s previous testimony. *See Hicklin,* 969 S.W.2d at 309. Defendant has failed to show that the trial court committed error by abusing its discretion in allowing Dep. Olmstead and Nurse Hancik to testify regarding hearsay statements of B.Z. Point denied.

In his third point, Defendant argues trial court error in denying Defendant's request for a mistrial based on improper closing argument by the State regarding evidence outside the record. Defendant alleges that this argument "had a significant effect on the verdict in that it bolstered [B.Z.'s] credibility, when the convictions rested on [B.Z.'s] testimony."

■■■■ We first observe that "[t]rial courts have broad discretion in the control of closing arguments." *State v. Crawford,* 32 S.W.3d 201, 206 (Mo.App.2000). This Court will not disturb the trial court's ruling unless it is clear that the trial court abused its discretion. *Id.* "Even if the prosecution's argument was improper, reversal is appropriate only if it is established that the comment of which [Defendant] complains had a 'decisive effect on the jury's determination.' " *State v. Cunningham,* 32 S.W.3d 217, 219 (Mo.App. 2000) (quoting *State v. Armentrout,* 8 S.W.3d 99, 111–12 (Mo. banc 1999), *cert. denied,* 529 U.S. 1120, 120 S.Ct. 1986, 146 L.Ed.2d 813 (2000)). Missouri has not adopted a *per se* rule which calls for mandatory reversal of all cases in which objectionable comments are made by a prosecutor. *Id.; see State v. Hibbert,* 14 S.W.3d 249, 254 (Mo.App.2000).

In a pre-trial motion, Defendant's trial counsel argued to the trial court that evidence of B.Z.'s discussions with Jennifer McCoullough, a counselor, should be excluded from evidence because the State failed to provide Defendant, in a timely fashion, with a copy of her reports relating to her interview with B.Z. The trial court excluded such evidence, and it was never presented during the trial. During closing argument, Defendant's trial counsel argued, "[t]his business about trying to trick the guy [Defendant] into going into the mother and father's bedroom, that's the first time that's come up, too, never heard that before. Where did she [B.Z.] get that idea? She would have told that to somebody before." The State responded to this remark by arguing to the jury that B.Z. had related the same account to another person. The State argued, "she did tell a counselor that she lied to the man [i.e., Def.] about the bathroom being at the end. Jennifer McCullough could not testify in this case...." Defendant objected to this

---

statement of any witness testifying in the trial of a criminal offense shall be received as substantive evidence, and the party offer-

ing the prior inconsistent statement may argue the truth of such statement.

argument, and the trial court sustained the objection. The trial court also ordered the jury to disregard the remarks made by the State. Defendant later requested a mistrial based on the State's improper argument but the trial court denied this request.

Defendant argues that the recitation of statements made by B.Z. to Jennifer McCullough by the State amounted to unsworn testimony by the prosecutor for the State and was highly prejudicial. Defendant further argues that the trial court's order to the jury to disregard the statement did not cure such error and that the only proper remedy was for the trial court to declare a mistrial.

 "A prosecutor has considerable leeway to make retaliatory arguments at closing." *State v. Wright,* 941 S.W.2d 877, 882 (Mo.App.1997). Even if the argument would otherwise be improper, a prosecutor may retaliate to an issue raised in the closing argument of Defendant. *Id.* at 882–83. The prosecutor may go further than the normal bounds of closing argument when responding to an issue raised by Defendant. *Id.* at 883.

 Defendant has not persuaded this Court that the statements made by the prosecutor regarding Jennifer McCullough were decisive in influencing the jury's verdict. There was only one statement made before Defendant objected. The trial court sustained the objection and ordered the jury to disregard the statement. In view of the strong evidence against the Defendant present in the record, we cannot say that the prosecutor's remarks resulted in a jury verdict different from that which was returned. *Id.* Point denied.

The judgment is affirmed.

PREWITT, J., RAHMEYER, J.